**Tracy L. MORELAND, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 20A03–9712–CR–450.

Court of Appeals of Indiana.

Nov. 5, 1998.

---

**290**

Kenneth R. Martin, Goshen, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

**OPINION**

KIRSCH, Judge.

After a jury trial, Tracy L. Moreland was convicted of child molesting, a Class C felony.[1] He raises the following issues on appeal:

I. Whether the victim's testimony was inherently unreliable and incredibly dubious and therefore insufficient to support Moreland's conviction.

II. Whether the trial court improperly admitted the victim's prior consistent statements by allowing a social worker and a police detective to testify as to what the victim had told them.

III. Whether the prosecutor's comment that the evidence was "unrefuted" was an improper comment on Moreland's decision not to testify.

IV. Whether the instruction admonishing the jury not to consider Moreland's silence was improper because it referred to Moreland's "failure" to testify.

V. Whether the trial court erred in failing to instruct the jury on the definition of intent and refusing to answer a question on that subject submitted to it by the jury.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

The facts most favorable to the judgment establish that on March 30, 1996, the victim, H.V., Moreland's twelve-year-old daughter, went to Moreland's house to stay overnight. Moreland's girlfriend and their two children went to bed, leaving Moreland and H.V. watching movies and playing video games alone together. Moreland asked H.V. if she wanted to make some money, then told her she could do so by lying on the floor, closing her eyes, and counting to ten. H.V. inferred that Moreland was asking her to have sex with him. She refused and went to bed. Moreland followed her into her bedroom and sat next to her on the bed. He then fondled her breast on the outside of her shirt. The next day, H.V. told her aunt what had taken place. Her aunt told H.V.'s mother. H.V. eventually told her mother what had happened after her mother confronted her. H.V. and her mother then contacted police and gave a statement, after which Moreland was charged with child molesting.

At Moreland's trial, the State presented the testimony of H.V., her mother, and a social worker and a detective, both of whom had interviewed H.V. about the incident. Moreland presented no evidence in his de-

1. See IC 35–42–4–3.

fense other than H.V.'s deposition in an effort to impeach her. The jury convicted Moreland of the charge. He now appeals.

## DISCUSSION AND DECISION

### I. Sufficiency of the evidence

█ Moreland first argues that there was insufficient evidence to support his conviction for child molesting because H.V.'s testimony was inherently unreliable and incredibly dubious. When addressing a sufficiency of the evidence claim, a reviewing court neither weighs the evidence nor judges the credibility of the witnesses. *Heavrin v. State*, 675 N.E.2d 1075, 1079 (Ind.1996). We consider all evidence favorable to the jury's verdict along with any reasonable inferences that can be drawn therefrom. *Id.* A reviewing court will not reverse a verdict if there is substantial evidence of probative value to support the conclusions of the jury. *Faust v. State*, 642 N.E.2d 1371, 1374 (Ind.1994).

Moreland points to numerous inconsistencies in H.V.'s account of what took place during the incident in question. At trial, H.V. testified that after Moreland asked her to lie down on the floor and close her eyes, she went to the bedroom. Moreland followed her into the bedroom and put his hand on her breast and squeezed for more than a few seconds and less than a minute. In her original statement to police, H.V. stated that Moreland touched her breast when he gave her a hug while they were in the living room. This took place before the suggestion that she should lie down and before she went to her bedroom. She later recanted this story, telling the police detective that she had fabricated it. At her deposition, she testified that Moreland touched her breast while the two were in the bedroom in the course of grabbing hold of her and flipping her over angrily. Moreland argues that the inconsistencies in H.V.'s account of what happened render her testimony inherently unreliable and incredibly dubious.

█ A reviewing court will impinge on the jury's responsibility to judge the credibility of the witnesses only when it is confronted with inherently improbable testimony, or with coerced, equivocal, or wholly uncorrob-

orated testimony of incredible dubiosity. *Rodgers v. State*, 422 N.E.2d 1211, 1213 (Ind. 1981). The rule of incredible dubiosity is limited to cases where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence. *Tillman v. State*, 642 N.E.2d 221, 223 (Ind.1994). We reject Moreland's argument because H.V.'s in-court testimony was not inherently contradictory nor the result of coercion. The fact that H.V.'s version of events was not entirely consistent is a fact that goes to her credibility. The determination of whether or not her testimony was to be believed was for the jury, and this court may not replace the jury's judgment of her credibility with its own. *Heeter v. State*, 661 N.E.2d 612, 616 (Ind.Ct.App.1996). The events described by H.V. were not inherently improbable, nor do they run counter to human experience. *See id.* at 615. The jury heard and saw the evidence and was entitled to believe H.V.'s in-court testimony. There was sufficient evidence to support Moreland's conviction for child molesting.

### II. Prior consistent statements

Moreland next argues that the trial court erred by allowing a social worker and a police detective to testify as to what H.V. told them occurred between her and Moreland. The State asserts that this testimony was properly admitted as a prior consistent statement under Indiana Evidence Rule 801(d)(1)(B) because Moreland accused H.V. of fabricating the story. Moreland counters that the statements were inadmissible bolstering or vouching evidence.

In *Modesitt v. State*, 578 N.E.2d 649 (Ind. 1991), our supreme court adopted Federal Rule of Evidence 801(d)(1) governing the admissibility of prior statements as substantive evidence. The Indiana Rules of Evidence have since been adopted, and accomplish by Rule what *Modesitt* did by decision. *Humphrey v. State*, 680 N.E.2d 836, 838 (Ind. 1997). Under Rule 801(d)(1), certain statements made out of court by witnesses who testify at trial and are subject to cross-examination concerning the statements are admissible as substantive evidence under some cir-

cumstances. One such circumstance is when the statement is consistent with the declarant's trial testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication and the statement is made before the motive to fabricate arose. Evid. R. 801(d)(1)(B); *Marshall v. State,* 643 N.E.2d 957, 959 (Ind.Ct.App.1994), *trans. denied* (1995). It is this basis upon which the State argues that the statements were properly admitted.

■ On cross-examination of H.V., defense counsel asked her, "Isn't it time that you be straight with these folks?" *Record* at 217. He also pointed out numerous inconsistencies between H.V.'s trial and deposition testimony. The State then called the social worker and the police detective, through whom it introduced the consistent statements H.V. told them about the incident. The defense's theory was that H.V. fabricated the story in order to create trouble for Moreland, her father, because his relationship with both H.V. and her mother was strained. According to this theory, H.V.'s motive to lie arose prior to any of the statements in question. Although Moreland accused H.V. of fabricating her story, he made no charge that she had recently done so. Instead, his theory was that she was lying the entire time. Thus, Rule 801(d)(1)(B) does not apply, and the statements were hearsay when offered for the truth of the matter asserted.

■ In the case before us, the challenged statements were not offered as substantive evidence, but were offered to rehabilitate H.V. after she had been impeached by her prior inconsistent statement. When prior statements are used to impeach and rehabilitate a witness they are not hearsay because they are not used to prove the truth of the matter asserted. *Birdsong v. State,* 685 N.E.2d 42, 46 (Ind.1997). The question becomes whether Rule 801 forecloses the use of such statements for nonsubstantive, i.e., rehabilitative purposes.

Indiana Evidence Rule 101(a) states that "[i]f these rules do not cover a specific evidence issue, common or statutory law shall apply." Because Rule 801(d) speaks only to the admission of prior consistent statements for their substance, we must look to pre-rule cases for the relevant common law on the rehabilitative use of these statements. Many pre-rules cases stated that prior consistent statements were admissible to rehabilitate witnesses. For instance, in *Patterson v. State,* 563 N.E.2d 653 (Ind.Ct.App.1990), the defendant offered evidence that the child victim in a molestation case had recanted her accusation against him. The State then introduced the victim's statements to her mother and a police detective to show the consistency of the victim's accusations against the defendant. Noting that testimony which rehabilitates a witness who has made prior inconsistent statements may be relevant and admissible, we held that the statements were properly admitted for rehabilitative purposes. *Id.* at 657. In explanation of this rule, the supreme court stated,

"It has long been the rule that where a witness is impeached by evidence of statements made out of court contradictory to those made in court on the witness stand, it is permissible on rebuttal to introduce evidence of statements made at or about the time of the impeaching statements and in harmony with the statements or testimony given on the witness stand."

*Thompson v. State,* 223 Ind. 39, 41, 58 N.E.2d 112, 112 (Ind.1944).

In *United States v. Ellis,* 121 F.3d 908 (4th Cir.1997), *cert. denied* —— U.S. ——, 118 S.Ct. 738, 139 L.Ed.2d 674 (1998), the Fourth Circuit addressed the same claim under the identical Federal Rule of Evidence. It stated,

"Appellant is simply wrong in assuming that 'the only possible avenue for admitting this evidence was Rule 801(d)(1)(B) of the Federal Rules of Evidence.' Brief of Appellant at 38. Even before adoption of the federal rules, this court recognized that 'where a cross-examiner has endeavored to discredit a witness by prior inconsistent statements, it is sometimes permissible to offset the damage by showing prior consistent utterances.'"

*Id.* at 919 (quoting *Schoppel v. United States,* 270 F.2d 413, 417 (4th Cir.1959)).

In his treatise, Judge Miller reaches the same conclusion. Noting that Rule 801 does

not speak to the nonsubstantive use of prior consistent statements, he explains:

> "If an adversary has made an express or implied charge against the witness of recent fabrication or improper influence or motive, and the prior consistent statement was made before the motive to fabricate arose, the prior consistent statement is admissible as substantive evidence; if the prior consistent statement was made after the motive to fabricate arose, however, it is only admissible to rehabilitate the witness."

13 ROBERT L. MILLER, JR., INDIANA EVIDENCE § 613.208 (1995).

■ We conclude, likewise, that the adoption of Rule 801 did not replace the admissibility of prior consistent statements to rehabilitate a witness, but merely allowed a certain subset of these statements to be used as substantive evidence of the truth of the matter asserted. Here, H.V.'s prior consistent statements were properly admitted to rehabilitate her after she was impeached by the use of her prior inconsistent statement. The trial court did not abuse its discretion in admitting the statements.

### III. Prosecutorial misconduct

Moreland next argues that the prosecutor impermissibly commented in his closing argument on Moreland's decision not to testify by stating, "Your decision is based solely and exclusively on the evidence that has been presented in this courtroom. And the evidence that has been presented in this courtroom is unrefuted." *Record* at 302. This remark came at the conclusion of the State's closing argument, prior to the defense's closing argument and the State's rebuttal. Moreland claims that this statement could only be interpreted as an adverse comment on his privilege to remain silent, and as such, violated his Fifth Amendment rights.

■ "The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from the defendant's silence." *Moore v. State,* 669 N.E.2d 733, 739 (Ind.

1996). However, "[t]he Indiana Supreme Court has indicated that if in its totality the prosecutor's comment is addressed to other evidence rather than the defendant's failure to testify, it is not grounds for reversal." *Channell v. State,* 658 N.E.2d 925, 932 (Ind. Ct.App.1995), *trans. denied* (1996). Comment on the lack of evidence by the defense concerning otherwise incriminating evidence against him is proper "as long as the State focuses on the absence of any evidence to contradict the State's evidence and not on the accused's failure to testify." *Martinez v. State,* 549 N.E.2d 1026, 1028 (Ind.1990).

■ Moreland relies on *Dooley v. State,* 271 Ind. 404, 393 N.E.2d 154 (1979) in support of his argument. In *Dooley,* the prosecutor stated that the victim's testimony had not been controverted in any way by other evidence. He then told jurors that they could not draw any inference from the defendant's decision not to testify, but that they could infer "something from the fact that nobody else got up and told you where [the defendant] was that night." *Id.* at 405, 393 N.E.2d at 155. Based on these comments, the supreme court reversed the defendant's convictions. While the first comment in *Dooley* is similar to the comment here, there was an additional, more extensive comment in *Dooley.* The court in *Dooley* specifically relied on the second comment, that "nobody else got up" as an improper reference to the defendant's silence. Here, there was no such comment. Instead, the prosecutor's comment focused on the nature of the State's case, rather than the lack of information brought forward by the defense.

In *Taylor v. State,* 677 N.E.2d 56 (Ind.Ct. App.1997), *trans. denied,* this court considered a similar challenge to a prosecutor's comment that "the evidence is uncontroverted, there's no evidence before you to the contrary...." *Id.* at 60. We held that this comment was "clearly a comment on the evidence as a whole. It is general enough not to constitute an impermissible reference to [the defendant's] failure to testify." *Id.* at 61.

The comment in this case, that the evidence was "unrefuted," is substantially similar to that upheld in *Taylor.* The

prosecutor's comment that the evidence was unrefuted focused on the totality of evidence, not on Moreland's failure to testify. It was not improper and does not constitute prosecutorial misconduct.

## IV. Jury instructions

### A. Failure to testify

Moreland next claims that the trial court erred in instructing the jury that it could draw no inference from his failure to testify in his own defense. He argues that this instruction draws the jurors' attention to the fact that he did not testify, and that the use of the word "failure" implies something lacking on his part and conveys the opposite of the intended message. We first note that Moreland did not object to this instruction at trial. Ordinarily, a failure to object to a jury instruction results in a waiver of the issue. *Brown v. State*, 691 N.E.2d 438, 444 (Ind. 1998). However, an error may be fundamental and thus not subject to waiver, if it is a "substantial blatant violation of basic principles." *Id.* (quoting *Winegeart v. State*, 665 N.E.2d 893, 896 (Ind.1996)). Fundamental error is error that, if not corrected, would deny a defendant fundamental due process. *Id.* The error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.*

An instruction not to consider a defendant's failure to testify given over the defendant's objection violates Article I, Section 14 of the Indiana Constitution. *Heiser v. State*, 596 N.E.2d 965, 965 (Ind.Ct.App. 1992), *trans. denied.* However, the Fifth and Fourteenth Amendments to the United States Constitution require that such an instruction be given when requested by a defendant. *Id.* at 965–66. Our courts have had many opportunities to examine instructions similar to the one at issue here in the context of challenges to whether it should or should not have been given. In none of these cases has any court ruled that the instruction itself is improper.

In *Lucas v. State*, 499 N.E.2d 1090 (Ind. 1986), co-defendants were tried jointly for burglary. One defendant requested the instruction, while the other defendant objected to it. The supreme court reviewed the rights of both parties and the instruction at issue, which read in relevant part, "A defendant's failure to testify shall not be commented upon, referred to, or in any manner considered by the jury in determining the guilt or innocence of that defendant." *Id.* at 1093. The court held that the instruction was properly given over the objection of one defendant, because the other defendant's right to have this instruction read was paramount. *Id.*

In this case, the challenged portion of the instruction reads, "The defendant's failure to testify shall not be considered by the jury in determining the guilty [sic] or innocence of the defendant." *Record* at 79. The language used here is similar to that used in *Lucas*, where the court held the instruction properly given. Absent Moreland's objection, the instruction was not error.[2]

### B. Intent

Moreland next contends that the trial court erred by not instructing the jury on the element of intent. Moreland has waived the alleged error by failing to object to the omission in the trial court's instructions and failing to tender his own instructions to correct the claimed inadequacy of the instructions. *Patton v. State*, 580 N.E.2d 693, 696 (Ind.Ct.App.1991), *trans. denied* (1992). Waiver notwithstanding, Moreland's argument fails.

The trial court instructed the jury as follows:

"To convict the defendant of child molesting, the State must have proved each of the following elements beyond a reasonable doubt. The defendant

2. Although we hold that in the absence of an objection the instruction was not error, Moreland's argument is not without merit. In the exercise of their discretion, trial courts when instructing juries may wish to avoid the use of the phrase "defendant's failure," which is subject to pejorative construction. A defendant's exercise of his constitutional right not to incriminate himself is not a "failure."

1. performed or submitted to any fondling or touching of either the child or the defendant

2. with the intent to arouse or satisfy the sexual desires of either the child or the defendant and

3. the child was under fourteen years of age."

*Record* at 69. Moreland argues that the trial court erred in failing to define the phrase "with the intent to." The trial court has a duty to give definitional instructions only if the words are of a technical or legal meaning normally not understood by jurors unversed in the law. *Barrett v. State*, 675 N.E.2d 1112, 1118 (Ind.Ct.App.1996), *trans. denied* (1997). "With the intent to" is not the type of phrase that has a technical or legal meaning not understood by the average juror. *Patton*, 580 N.E.2d at 696. The trial court did not err in failing to offer a definitional instruction for the phrase "with the intent to." [3]

Affirmed.

STATON and ROBB, JJ., concur.

---

**3.** As support for his argument that the trial court failed adequately to instruct the jury on the word "intent," Moreland points to evidence of jury confusion on this point. During deliberations, the jury gave the court a note which asked the court for a definition and explanation of the word "intent." After consulting with both attorneys, the court responded that it was not permitted by law to answer the jury's question. Moreland argues that under IC 34–1–21–6, the court has the responsibility to clear up points of law when requested to do so by the jury. IC 34–1–21–6 provides:

"After the jury ha[s] retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys."

In *Anglin v. State*, 680 N.E.2d 883, 885 (Ind.Ct. App.1997), we noted that the proper procedure when a jury requests information as to a point of law is to call the jury into open court in the presence of the parties and to reread the instructions given prior to their deliberations without emphasis on any of them and without further comment. This procedure was not followed here. However, the failure to follow the proper procedure is reversible error only upon a showing of prejudice. *Id.* In this case, the jury instructions contained no instruction with regard to the meaning of "intent." Therefore, it would have been futile to reread the instructions and failing to do so did not prejudice Moreland. In addition, we note that the trial court's written response to the jury's question was approved and signed by defense counsel. There was no reversible error here.