

FILED

Feb 20 2019, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ronald J. Moore
The Moore Law Firm, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jonathon Barthalow, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 20, 2019 <br><br> Court of Appeals Case No. <br> 18A-CR-1366 <br><br> Appeal from the Wayne Circuit Court <br><br> The Honorable David A. Kolger, Judge <br><br> Trial Court Cause No. <br> 89C01-1711-F2-21 |

**Robb, Judge.**

# Case Summary and Issues

[1]   Following a jury trial, Jonathon Barthalow was convicted of burglary, a Level 3 felony. Barthalow presents two issues for our review, namely: (1) whether the evidence is sufficient to sustain Barthalow's burglary conviction, which required proof that he intended to commit felony battery; and (2) whether the trial court committed fundamental error by failing to instruct the jury on the definition of bodily injury. Concluding the evidence was sufficient and the trial court did not commit fundamental error, we affirm.

# Facts and Procedural History

[2]   Carry Sester lived in a duplex in Richmond, Indiana. On November 10, 2017, Crimson Pitcher was staying with Sester and invited her friend, Joshua Mays, over to drink. At the time, Barthalow's brother, Daryl, was dating Crimson's cousin, Tessa Sittloh. Earlier in the evening, Sittloh, driving her white truck, dropped Mays and Pitcher off at Sester's house and then returned to Daryl's trailer. Mays had been dating Barthalow and Daryl's sister, Ashley. Barthalow and Daryl heard from Ashley's ex-boyfriend that Mays threatened to hit Ashley.

[3]   Mays, Pitcher, and Sester were in Pitcher's room, sitting on the bed talking and drinking. They heard "banging on the door" and the sound of someone running up the stairs. Transcript, Volume II at 13. The bedroom door flew open and Daryl "rushed over to the bed where [Mays] was sitting[,]" kicked

Mays off the bed, and began to beat him. Tr., Vol. I at 206. Barthalow came in and while Mays was curled up in the fetal position on the floor, the two kicked, punched, and beat him. Sester recalled that Daryl said, "this is for hitting my sister." *Id*. Sester screamed and tried to get Daryl and Barthalow to stop.

[4] Daryl and Barthalow were able to get Mays into a corner and Sester pulled Daryl off Mays. Daryl then threw her against the wall and said it was "none of [her] F'ing business." *Id*. at 207. Sester attempted to call 911, but Daryl knocked the phone out of her hand. Sester's sister, Freda Short, who lived next door on the other side of the duplex, heard the noise and believed someone was attacking Sester. Short, along with her husband and housemate, went next door to investigate. When they entered the room, the brothers were attempting to throw Mays out of the window. Short called the police and Sester called 911 for an ambulance.

[5] The brothers fled the house, ran up the road, and got into Sittloh's truck. They went to Daryl's trailer where Sittloh observed them in the bathroom as Daryl washed his hands. She overheard the two discussing that they visited Mays and heard Barthalow tell his sister on the phone that "they took care of it[.]" Tr., Vol. II at 127. Barthalow asked Sittloh to "check on" Pitcher, so Sittloh and Daryl drove her white truck back toward Sester's house. *Id*. at 129. Police received a call that two males had fled the scene and were heading westbound in a white truck. Police in the area then pulled the truck over en route. Daryl had blood on his clothes, boots, and hands, as well as a cut on his middle

knuckle that was bleeding. Daryl was arrested and Barthalow was arrested shortly thereafter.

[6] When police arrived at Sester's house, Mays was "hunched over[,]" with numerous contusions, bruises, and bloody spots on him. Tr., Vol. I at 227. Mays' "right arm was kind of at an angle. He said he couldn't move it very well, and . . . his ribs hurt on his left side and he had a large bruise on his left side." *Id.* Mays had blood on his face and in his mouth, making it difficult for him to speak with one of the officers, and he would not move his arm. Officers found blood on the baseboard and windowsill in the room where Mays told them the incident had taken place.

[7] Mays was transported to Reid Hospital in Richmond, where he was treated by Dr. Jennifer Behrens. She ordered blood tests, X-rays, and CAT scans. Dr. Behrens diagnosed Mays with multiple facial contusions and bilateral upper extremity contusions. There was soft tissue swelling on his forehead, two black eyes, injuries to his lip, and swelling and abrasions around his ear. In addition, Mays had tenderness in his upper chest, ribs, left elbow, and right wrist. He had multiple abrasions and contusions over his upper extremities. Mays did not have any broken bones, did not lose consciousness during the incident, and was not admitted to the hospital. Mays rated his pain as a ten, the highest score. Dr. Behrens prescribed him pain and nausea medication and Mays was given head injury precautions.

[8] On November 11, the State charged Barthalow with burglary, a Level 2 felony, and battery resulting in serious bodily injury, a Level 5 felony. At trial, Mays described his pain as "pretty bad[,]" *id*. at 89, but not "extreme[,]" *id*. at 92. Mays testified that he did not describe his pain as extreme "because I was still . . . conscious. I was still able to walk. I wasn't dead . . . I didn't break anything[.]" *Id*. at 93. Mays testified that he did not exaggerate his pain to get pain medicine.

[9] A jury trial was held from April 18 through April 20. The jury was instructed on the elements of burglary as Level 2 and Level 3 felonies:

> The offense of Burglary, a level 2 felony, is defined by statute, insofar as it is applicable, as follows:

> "A person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary, a Level 5 felony. However, the offense is a Level 2 felony if it results in *serious bodily injury* to any person other than a defendant."

> The included offense of Burglary, a level 3 felony, is defined by statute, insofar as it is applicable, as follows:

> "A person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary, a Level 5 felony. However, the offense is a Level 3 felony if it results in *bodily injury* to any person other than a defendant."

> * * *

The included offense of Residential Entry, a level 6 felony, is defined by statute, insofar as it is applicable, as follows:

"A person who knowingly or intentionally breaks and enters the dwelling of another person commits residential entry, a level 6 felony."

* * *

The offense of Battery, as a felony, is defined as a knowing or intentional touching of another person in a rude, insolent or angry manner, resulting in either *moderate bodily injury, or serious bodily injury,* to another person.

"Moderate bodily injury" means any impairment of physical condition that includes substantial pain.

"Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes:

> (1)  serious permanent disfigurement;

> (2)  unconsciousness;

> (3)  extreme pain;

> (4)  permanent or protracted loss or impairment of the function of a bodily member or organ; or

> (5)  loss of a fetus.

Appellant's Appendix, Volume Two at 105-07 (emphasis added).

[10] In closing argument, the State explained to the jury the elements and requisite intent to prove Level 2 felony burglary, as well as Level 3 felony burglary as a lesser-included offense and the two options for felony battery, moderate bodily injury and serious bodily injury. *See* Tr., Vol. II at 202-03. The State argued that Mays suffered extreme pain as a result of the incident and Barthalow argued the evidence did not reveal Mays suffered serious bodily injury.

[11] The jury ultimately found Barthalow guilty of burglary, a Level 3 felony, a lesser included offense of Count I. The trial court entered a judgment of conviction and sentenced Barthalow to ten years in the Indiana Department of Correction. Barthalow now appeals.

# Discussion and Decision

## I. Sufficiency of the Evidence

[12] In reviewing the sufficiency of the evidence required to support a criminal conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). We consider only the evidence supporting the trial court's judgment and any reasonable inferences that can be drawn therefrom. *Id*. Thus, we consider conflicting evidence "most favorably to the trial court's ruling." *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007) (internal quotation omitted). "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Bailey*, 907 N.E.2d at 1005.

[13]     The jury found Barthalow guilty of burglary, a Level 3 felony, the lesser included offense of Count I:

> A person who breaks and enters the building or structure of another person, *with intent to commit a felony* or theft in it, commits burglary, a Level 5 felony. However, the offense is . . . a Level 3 felony if it results in *bodily injury* to any person other than a defendant[.]

Ind. Code § 35-43-2-1(2) (emphasis added). Bodily injury is defined as "any impairment of physical condition, including physical pain." Ind. Code § 35-31.5-2-29. Barthalow is alleged to have intended to commit the felony of battery. The knowing or intentional touching of another person in a rude, insolent, or angry manner, resulting in moderate bodily injury or serious bodily injury to the other person constitutes felony battery. Ind. Code § 35-42-2-1(c)(1), (e)(1), (g)(1). Moderate bodily injury means "any impairment of physical condition that includes substantial pain." Ind. Code § 35-31.5-2-204.5. Serious bodily injury, on the other hand, is bodily injury that creates substantial risk of death or that causes: serious permanent disfigurement; unconsciousness; extreme pain; permanent or protracted loss or impairment of the function of a bodily member or organ; or loss of a fetus. Ind. Code § 35-31.5-2-292.

[14]     Barthalow was convicted of burglary, a Level 3 felony, which required the State to prove beyond a reasonable doubt that Barthalow did: (1) break and enter; (2) the building or structure of Sester and Pitcher; (3) with the intent to commit a felony therein; and (4) that the burglary resulted in bodily injury to another person other than the defendant. *See* Ind. Code § 35-43-2-1(2). Barthalow does

not specifically challenge the first two elements but appears to take issue with the extent of Mays' resulting injuries.[1]

[15] Because the jury did not find Barthalow guilty of Level 2 burglary, which requires infliction of serious bodily injury, and instead found him guilty of Level 3 burglary, he argues the jury "must have found the predicate felony battery for the [Level 3 burglary] to be one which resulted in moderate bodily injury." Brief of Appellant at 16. As best as we can discern, Barthalow then argues that because the evidence was insufficient to establish May's injuries were "anything beyond simple bodily injury[,]" the evidence was similarly insufficient to support his conviction of Level 3 burglary. *Id.* at 22.

[16] Even if Barthalow's assertion to that point was correct, however, his argument still misunderstands the difference between the *intent* to inflict "moderate" or "serious bodily injury"—required to satisfy the "with the intent to commit a felony" element of burglary—and the *resulting* injury—required to satisfy the "resulting in bodily injury" element of burglary. Ind. Code § 35-42-2-1(e)(1), (g)(1); Ind. Code § 35-43-2-1(2).

[17] "Burglars rarely announce their intentions at the moment of entry, so the intent to commit a given felony is one fact which may be inferred from the circumstances." *Gilliam v. State*, 508 N.E.2d 1270, 1271 (Ind. 1987). The

---

[1] To the extent Barthalow claims Mays' injuries are exaggerated and "inherently unbelievable[,]" Brief of Appellant at 22, we view such argument as simply an invitation to reweigh the evidence, which we will not do. *See Bailey*, 907 N.E.2d at 1005.

evidence of intent "need not be insurmountable, but only provide a solid basis to support a reasonable inference that the defendant intended to commit the underlying felony charged." *Id.* Thus, the State had to prove that Barthalow had the intent to commit felony battery when he entered Sester's house, meaning Barthalow intended to touch Mays in a rude, insolent or angry manner, *resulting in moderate or serious bodily injury*. Ind. Code § 35-42-2-1(c)(1), (e)(1), (g)(1). In other words, the State had to prove that Barthalow *intended* that his actions result in moderate or serious bodily injury of Mays, not that his actions *actually resulted* in moderate or serious bodily injury to Mays. The burglary statute only requires the intent to commit the felony, battery here, and that the burglary resulted in bodily injury to Mays.

[18] Viewed most favorably to the judgment, the record reveals that Barthalow and Daryl broke into Sester's house, went upstairs, and began kicking, punching, and beating Mays as he was curled up on the floor in the fetal position. Despite Sester's attempts to stop them, Daryl and Barthalow continued to beat Mays and attempted to throw him out of a second-floor window. Thus, there is sufficient evidence from which a reasonable jury could infer that Barthalow intended to cause moderate or serious bodily injury to Mays. *See* Ind. Code § 35-31.5-2-204.5; Ind. Code § 35-31.5-2-292.

[19] With respect to the last element, Barthalow's assertion that the jury predicated its felony battery for the burglary conviction on a battery that resulted in moderate bodily injury is misplaced. The statute only requires that he break and enter with the intent to commit a felony and the burglary resulted in bodily

injury to Mays.[2] Although Barthalow's argument is focused on whether Mays' injuries meet the definition of moderate bodily injury, the burglary statute only requires bodily injury, which implies less proof is required than moderate or serious bodily injury. All that is required is that Mays experienced physical pain, not that the pain he experienced be of a certain magnitude or duration. *Toney v. State,* 961 N.E.2d 57, 59 (Ind. Ct. App. 2012). There is no dispute that Mays suffered physical pain and Barthalow concedes that Mays suffered bodily injury. *See* Br. of Appellant at 22.

[20] Moreover, the evidence reveals that Mays had multiple contusions and abrasions on his body, soft tissue swelling on his forehead, two black eyes, injuries to his lip, swelling and abrasions around his ear, and tenderness in his upper chest, ribs, left elbow, and right wrist. Mays was also given medicine to manage his pain, which he rated as a ten on a scale of 1-10. We conclude there is "substantial evidence of probative value" such that the jury could have concluded Barthalow was guilty beyond a reasonable doubt of burglary, a Level 3 felony. *Bailey*, 907 N.E.2d at 1005.

## II. Fundamental Error

[21] We turn to Barthalow's claim of fundamental error pertaining to the jury instructions. In his brief, Barthalow concedes that he did not object to the jury

---

[2] Accordingly, we need not address whether there is sufficient evidence that Mays' injuries met the definition of moderate bodily injury.

instructions. He argues, however, that the trial court's failure to instruct the jury on "the several gradients of bodily injury resulted in manifest prejudicial injustice rising to the level of fundamental error." Br. of Appellant at 24. We disagree.

[22] "Failure to object to a jury instruction results in waiver on appeal, unless giving the instruction was fundamental error." *Wright v. State*, 730 N.E.2d 713, 716 (Ind. 2000). An error may be fundamental and thus not subject to waiver, if it is a "substantial blatant violation of basic principles." *Moreland v. State*, 701 N.E.2d 288, 294 (Ind. Ct. App. 1998) (internal quotation omitted). The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. *Id.* "This exception to the general rule requiring a contemporaneous objection is narrow, providing relief only in 'egregious circumstances' that made a fair trial impossible." *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016).

[23] In considering a claim of fundamental error with respect to jury instructions, we look to the instructions as a whole to determine if they were adequate. *Munford v. State*, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010). "When determining whether a defendant suffered a due process violation based on an incorrect jury instruction, we look not to the erroneous instruction in isolation, but in the context of all relevant information given to the jury, including closing argument, and other instructions." *Boesch v. State*, 778 N.E.2d 1276, 1279 (Ind. 2002) (internal citations omitted). When all information, as a whole, does not

mislead the jury as to the correct understanding of the law, there is no due process violation. *Id.*

[24] The jury was instructed on the elements of burglary as a Level 2 felony as well as the lesser included offenses of burglary as a Level 3 felony and residential entry, a Level 6 felony. The trial court also instructed the jury as to the definitions of felony battery, serious bodily injury, and moderate bodily injury. *See supra* ¶ 9. Barthalow appears to take issue with the trial court giving an instruction on residential entry, a lesser included offense of burglary while failing to provide an instruction with the definition of "bodily injury." He argues the trial court's failure to provide "the outer limit of bodily injury at the misdemeanor level even after the trial court gave a non-felony battery crime instruction as a lesser included offense" was prejudicial. Br. of Appellant at 27.

[25] A trial court's failure to *sua sponte* give instructions on lesser-included offenses does not constitute fundamental error. *Lane v. State*, 953 N.E.2d 625, 630 (Ind. Ct. App. 2011). The "entitlement to included offenses instructions, in an appropriate case, is not a fundamental right but rather is one that must be claimed and the claim preserved, in accordance with established rules of trial and appellate procedure." *Helton v. State*, 273 Ind. 211, 213, 402 N.E.2d 1263, 1266 (1980). Barthalow did not object to the jury instructions or tender his own instructions.

[26] To the extent that Barthalow claims the trial court erred in failing to provide the definition of bodily injury, we first note that in closing argument, the State explained the key difference between Level 2 and Level 3 burglary:

> So instead of serious bodily injury, we have the option of bodily injury . . . And that's really important. Bodily injury, I went ahead and put the definition up there. That does have a legal definition, which is, "Any impairment of physical condition, including physical pain."

Tr., Vol. II at 216.

[27] Although the definition of bodily injury was not included in the jury instructions, it was provided in the State's closing argument and displayed on a screen at that time. Moreover, the jury instructions included the definitions of serious bodily injury and moderate bodily injury. "When determining whether an element of an offense has been proven, the jury may rely on its collective common sense and knowledge acquired through everyday experiences – indeed, that is precisely what is expected of a jury." *Clemons v. State*, 83 N.E.3d 104, 108 (Ind. Ct. App. 2017), *trans. denied*. The trial court has a duty to provide further instruction defining words used in other instructions only if those words have technical or legal meaning "normally not understood by jurors unversed in the law." *Id*. Based on the provided definitions, the jury could likely infer from common sense the meaning of bodily injury. Viewing the instructions as a whole, we cannot conclude that the trial court's failure to provide the definition of bodily injury was a "substantial blatant violation of

basic principles" amounting to fundamental error. *Moreland*, 701 N.E.2d at 294.

# Conclusion

[28] Concluding the evidence was sufficient to support Barthalow's Level 3 felony burglary conviction and the trial court did not commit fundamental error in instructing the jury, we affirm.

[29] Affirmed.

Riley, J., and Kirsch, J., concur.