## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 24 2019, 10:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew Pence, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 24, 2019 <br><br> Court of Appeals Case No. 19A-CR-508 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Jeffrey L. Marchal, Judge Pro Tempore <br><br> Trial Court Cause No. 49G06-1808-F5-29212 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Matthew[1] Pence (Pence), appeals his conviction for battery resulting in moderate bodily injury, a Level 6 felony, Ind. Code §§ 35-42-2-1(c)(1); -(e)(1).

We affirm.

# ISSUE

Pence presents one issue on appeal, which we restate as: Whether the State proved beyond a reasonable doubt that he caused moderate bodily injury sufficient to sustain his battery conviction.

# FACTS AND PROCEDURAL HISTORY

Pence and S.B. were involved in an intermittent romantic relationship for three years. In August 2018, they were dating again. On August 22, 2018, S.B. went to work around 11:30 a.m. and returned home around 9:00 p.m. Pence, who had been consuming vodka, was asleep on S.B.'s bed in her bedroom on the upper floor of her townhome. When S.B. telephoned to place a takeout food order, Pence awoke and became angry that she was not ordering food for him. Pence wanted S.B. to take him home, but she declined.

---

[1] Pence's given name is spelled in the record as both "Mathew" and "Matthew." At trial, Pence spelled his name for the court reporter as "Matthew," so we use that spelling.

[5]     A verbal argument ensued, and, over the course of the ensuing five hours, the argument turned physical, starting when Pence grabbed S.B. by her hair and slammed her head into the bedroom wall several times, causing her "a lot of pain." (Transcript p. 16). S.B. told Pence to stop and attempted to ignore him. Pence was not deterred. Pence pursued S.B. into the hallway where he "football plowed" her, knocking her into the wall and then to the ground. (Tr. p. 16). While S.B. was on the floor, Pence placed all of his bodyweight on her such that she could not flee. Pence placed his hands on S.B.'s neck and choked her until she could no longer breathe. S.B. eventually extricated herself from Pence and fled to the bathroom and then to the bedroom where Pence again tackled her to the ground and choked her until she could not breathe. Pence also headbutted S.B. multiple times. At various times throughout the episode, Pence prevented S.B. from leaving her home by blocking her from the door. Pence also prevented S.B. from using her cell phone to seek assistance and eventually smashed the cell phone against the wall, disabling it.

[6]     Pence finally lay down and went to sleep around 2:30 a.m. S.B. fled the home and tried to drive away in her minivan. Pence pursued her on foot and threw himself on the minivan as S.B. pulled away. Pence fell off of the moving vehicle, and S.B. drove away. After driving around for thirty minutes, S.B. returned home to find her front door wide open. Pence was not in the home when she returned, so S.B. went to sleep. She was awakened around 6:00 a.m. by Pence, who was standing over her bed. Pence informed S.B. that he had filed a police report. S.B. agreed to drive Pence back to his residence. During

the trip to Pence's home, Pence became angry with S.B. and used his left hand to slam her head into the window of her car while she was driving. S.B. succeeded in driving Pence to his home and left him there.

[7] S.B. had a "very bad" migraine headache for two days, chest pain, and trouble breathing, so on August 24, 2018, she sought medical attention at St. Francis Hospital. (Tr. p. 15). S.B. had a knot the size of a fifty-cent piece on her forehead where Pence had headbutted her and which did not fully subside until three weeks later. S.B. had bruises on her neck, shoulders, and arms as well as internal bruising of her ribs. S.B. was examined and prescribed Naprosyn, a pain medication that is slightly stronger than what is available over-the-counter. A nurse at the hospital contacted law enforcement, and S.B. filed a report.

[8] On August 31, 2018, the State filed an Information, charging Pence with Level 5 felony criminal confinement with bodily injury, Level 6 felony criminal confinement, two Counts of Level 6 felony strangulation, Level 6 felony battery resulting in moderate bodily injury, three Counts of Class A misdemeanor domestic battery, and Class A misdemeanor interference with the reporting of a crime. On January 16, 2019, the trial court convened Pence's bench trial. S.B. testified that Pence had slammed her head into the ground or a wall "over [twenty] times." (Tr. pp. 19-20). The State argued that it proved the Level 6 felony battery resulting in moderate bodily injury through evidence that Pence had grabbed S.B.'s hair, hit her head multiple times, tackled her, and grabbed her arms, causing soreness, bruising, and a migraine headache. The trial court found Pence guilty of all of the charges against him.

On February 6, 2019, the trial court held Pence's sentencing hearing. Due to double jeopardy concerns, the trial court vacated Pence's convictions for Level 6 felony criminal confinement, one Count of Level 6 felony strangulation, and two Counts of Class A misdemeanor domestic battery. The trial court sentenced Pence to three years for his Level 5 felony criminal confinement conviction, to be served with Community Corrections, with 550 days of that sentence suspended to probation. The trial court also sentenced Pence to one year for each of his Level 6 felony battery and Level 6 felony strangulation convictions and to 180-day sentences for his other Class A misdemeanor convictions for domestic battery and interference with reporting of a crime. All of Pence's sentences were to be served concurrently.

Pence now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

Pence challenges the evidence supporting his conviction for Level 6 felony battery resulting in moderate bodily injury. It is well-established that when we review the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the judgment. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is not our role as an appellate court to assess witness credibility or to weigh the evidence. *Id*. We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*.

[12]     In order to prove that Pence committed a Level 6 felony battery on S.B., the State was required to show that he knowingly or intentionally touched her in a rude, insolent, or angry manner, resulting in moderate bodily injury. *See* I.C. §§ 35-42-2-1(c)(1); -(e)(1). Moderate bodily injury is further defined as "any impairment of physical condition that includes substantial pain." I.C. § 35-31.5-2-204.5. It is the province of the fact-finder to determine whether the State has proven the requisite degree of injury to establish the offense. *See Gebhart v. State*, 525 N.E.2d 603, 604 (Ind. 1988) (holding that "[t]he degree of injury is a question of fact for the jury.").

[13]     Pence does not dispute that he touched S.B. in a rude, insolent, or angry manner; rather, he contends that the State did not show that he inflicted moderate bodily injury on S.B. He directs our attention to a number of cases which he contends illustrate that the State did not prove the requisite level of injury. However, we agree with the State that these cases are not dispositive because none directly reviews the sufficiency of the evidence supporting the fact-finder's determination of moderate bodily injury. *See Barthalow v. State*, 119 N.E.3d 204, 209-10 (Ind. Ct. App. 2019) (reviewing the sufficiency of the evidence supporting Barthalow's intent to commit felony battery and infliction of mere bodily injury for purposes of a Level 3 felony burglary conviction); *Clemons v. State*, 83 N.E.3d 104, 107-08 (Ind. Ct. App. 2017) (finding no fundamental error where the trial court failed to instruct the jury on "serious bodily injury" during trial on a charge of Level 5 felony battery with a deadly weapon), *trans. denied*; *Garner v. State*, 59 N.E.3d 355, 358-59 (Ind. Ct. App.

2016) (affirming the trial court's determination at trial on a charge of battery resulting in moderate bodily injury that an instruction on the lesser-included offense of battery with bodily injury was not merited where victim's injuries would have justified an instruction on serious bodily injury).

[14] Neither party directs our attention to a case wherein this court has directly addressed the sufficiency of the evidence required to prove substantial pain and moderate bodily injury for purposes of a charge of Level 6 felony battery, and our own research uncovered none. However, we find the case of *Buckner v. State*, 857 N.E.2d 1011 (Ind. Ct. App. 2006), to be instructive. Buckner was charged with Class C felony battery, which required the State to prove that he knowingly or intentionally touched his victim in a rude, insolent, or angry manner that resulted in serious bodily injury. *Id.* at 1017. Serious bodily injury was defined, as it is now, in relevant part as "extreme pain." *See id.* at 1018 (citing I.C. § 35-41-1-25, now codified at I.C. § 35-31.5-2-292). We found that evidence that Buckner had "repeatedly struck [his victim] with his hands and fists, causing her severe pain and leaving marks on her body" was sufficient to support a finding that he had caused his victim serious bodily injury and, thus, had committed the offense of Class C felony battery. *Id.*

[15] Here, the evidence that the State relied upon to prove the Level 6 felony battery was that Pence grabbed S.B.'s hair, slammed S.B.'s head into the wall and ground, tackled her onto the ground and into a wall, grabbed her arms, and headbutted her several times. All in all, Pence had hit S.B.'s head into the ground or a wall over twenty times. These actions resulted in bruising and

marks on S.B.'s body and a 50-cent-piece-sized knot on her forehead. S.B. testified that Pence's act of slamming her head into the wall caused her "a lot" of pain and that she experienced a "very bad," two-day migraine headache as a result of the blows to her head. (Tr. pp. 15, 16). In addition, S.B. was prescribed a pain-reliever for her injuries after being examined at St. Francis. We find these injuries and S.B.'s pain level to be sufficiently analogous to those found in *Buckner* to constitute the higher degree of injury of serious bodily injury that we conclude that the fact-finder reasonably could have found that S.B.'s injuries and pain level constituted the lesser degree of injury of substantial pain and moderate bodily injury. Pence's argument that the evidence merely supported a finding of bodily injury essentially invites us to reweigh the evidence, which is contrary to our standard of review, and is, therefore, unpersuasive. *See Drane*, 867 N.E.2d at 146.

## CONCLUSION

Based on the foregoing, we conclude that the State produced sufficient evidence that Pence inflicted moderate bodily injury on S.B. to prove beyond a reasonable doubt that he committed Level 6 felony battery.

Affirmed.

Vaidik, C. J. and Bradford, J. concur