## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 08 2020, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Xavier Wesley Day, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | July 8, 2020 <br><br> Court of Appeals Case No. 19A-CR-2997 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Jeffrey L. Sanford, Judge <br><br> Trial Court Cause No. 71D03-1809-F1-20 |

**Kirsch, Judge.**

[1] Xavier Wesley Day ("Day") was convicted after a jury trial of attempted murder,[1] a Level 1 felony, and sentenced to forty years in the Department of Correction. Day appeals his conviction and raises the following issue for our review: whether the trial court committed fundamental error when it gave a final jury instruction for attempted murder requiring the jury to find that Day acted with the "conscious purpose" of killing and took a substantial step toward the "intended" crime of murder.

[2] We affirm.

## Facts and Procedural History

[3] In September 2018, Faith Salinas ("Salinas"), who was then seventeen years old, made a post on Facebook asking if anyone could show her how to make marijuana edibles. *Tr. Vol. 2* at 66. Alondra Trevino ("Trevino"), who was a friend of Salinas, responded, and they arranged to meet on September 24, 2018, to make the edibles together. *Id*. at 65, 67. Trevino was dating Day at the time, and although she had told Salinas that she would help her, she and Day had actually made a plan to rob Salinas of her marijuana instead. *Id*. at 65-66; *Tr. Vol. 3* at 29-30, 68-71. Trevino and Day knew that Salinas had a gun, and they were both concerned that she might be armed. *Tr. Vol. 3* at 76-77.

---

[1] *See* Ind. Code §§ 35-42-1-1(1), 35-41-5-1(a).

[4] On September 24, 2018, Trevino picked up Salinas at her house, and then stopped at the Citgo gas station near Salinas's house, telling Salinas she needed to get gas and other items. *Tr. Vol. 2* at 69-70; *Tr. Vol. 3* at 69. Day, Alvin Sanders ("Sanders"), and Que'lin Jones ("Jones") parked a couple of blocks south of the gas station and then walked to the gas station. *Tr. Vol. 3* at 19-20, 45-46. On the way to the gas station, Day and Sanders talked about their plan to get a "twenty sack," meaning $20 worth of marijuana, without paying for it. *Id*. at 22-23, 29-30. At approximately 9:44 p.m., Day, Sanders, and Jones arrived at the gas station. *Id*. at 45-46. When Trevino exited her car and went into the gas station, leaving Salinas sitting in the car, Sanders entered the back seat of the car and began talking to Salinas. *Tr. Vol. 2* at 70-71. Sanders asked Salinas if she had any marijuana and if she had a "pole," meaning a gun, and Salinas began to feel uncomfortable based on his questions and the fact that she felt he was acting strangely. *Id*. at 71-72, 83-84. Salinas then saw Day standing outside the passenger door, pointing a gun at her face, and he demanded, "give me all your shit." *Id*. at 72-73.

[5] Salinas told Day that he would have to kill her to get her stuff and got out of the car carrying her backpack, which had her marijuana inside. *Id*. at 73; *Tr. Vol. 3* at 7, 55. Day tried to grab the backpack away from Salinas, but she would not let go of it. *Tr. Vol. 2* at 73; *Tr. Vol. 3* at 79. Day shot Salinas, and she fell to the ground. *Tr. Vol. 2* at 74; *State's Exs*. 6, 6A. Day then took a couple of steps toward Salinas and shot her several more times. *Tr. Vol. 2* at 74-75; *Tr. Vol. 3* at 28, 71; *State's Exs*. 6, 6A. While Day was shooting her, Salinas was able to pull

her gun out of her jacket pocket and fire it at Day. *Tr. Vol. 2* at 74-75, 87; *State's Exs.* 6, 6A. Day and Sanders fled the scene on foot, and Trevino got into her car and drove away, leaving Salinas lying on the ground suffering from several gunshot wounds. *Tr. Vol. 3* at 45-46, 71.

[6] Police were dispatched to the area around 9:46 p.m. on a report of nine shots fired. *Tr. Vol. 2* at 19-20, 31-32. When the police arrived, they found Salinas lying on the ground barely breathing, unable to speak, and suffering from multiple gunshot wounds. *Id.* at 20-21, 32. The police recovered six spent nine-millimeter casings and one spent .32 caliber casing at the scene. *Id.* at 55. The .32 caliber casing had been fired by Salinas's gun, which was subsequently recovered from a trash can at the gas station, and the nine-millimeter casings were all fired by the same gun, which was not Salinas's gun. *Id.* at 54-55, 75; *Tr. Vol. 3* at 47-48. The police were able to obtain surveillance video from the gas station that had captured the shooting. Police also recovered Salinas's backpack, which had two bullet holes in it. *Tr. Vol. 2* at 54, 61-62; *Tr. Vol. 3* at 51-52; *State's Exs.* 6, 6A. The police also obtained GPS data from a device carried by Day that showed him approaching the gas station between 9:33 p.m. and 9:38 p.m., at the gas station from 9:44 p.m. to 9:46 p.m., and half a block south of the gas station at 9:47 p.m. *Tr. Vol. 3* at 45-46; *State's Exs.* 57-64.

[7] Salinas was taken to the hospital, suffering from multiple gunshot wounds to her chest, back, side, and arm, which required emergency surgery. *Tr. Vol. 2* at 75, 76; *Tr. Vol. 3* at 9, 35. At the hospital, she was able to tell the officers that Day was the person who had shot her. *Tr. Vol. 2* at 77-78; *Tr. Vol. 3* at 10, 35-

36.  At the hospital, it was determined that Salinas had been shot in the lung, liver, and spleen, suffered from a collapsed lung, and had to have her spleen removed.  *Tr. Vol. 2* at 76-77.  She also suffered injury to the vertebrae in her back that left her paralyzed from the waist down and confined to a wheelchair.  *Id.* at 67, 76-77.

[8]  The State charged Day with Level 1 felony attempted murder and Level 2 felony attempted robbery resulting in serious bodily injury.  *Appellant's Conf. App. Vol. 2* at 4, 74.  A jury trial was held on October 21 and 22, 2019.  *Id*. at 162.  At the conclusion of the trial, the trial court instructed the jury as to the elements of the charged crimes, and the instruction for the attempted murder charge read:

> To convict the defendant of Count I, Attempted Murder, a Level 1 felony, the State must have proven each of the following elements beyond a reasonable doubt:
>
> 1. The defendant, Xavier Wesley Day,
>
> 2. acting with the conscious purpose of killing Faith Salinas,
>
> 3. did touch Faith Salinas with a deadly weapon, to-wit:  shot Faith Salinas,
>
> 4. which was conduct constituting a substantial step toward the commission of the intended crime of killing Faith Salinas.

*Id*. at 98.  Day did not object to the instruction and told the trial court that its instructions were "fine."  *Tr. Vol. 3* at 59.

[9]     The State, in its closing argument regarding the attempted murder charge, told the jury that "conscious objective" means doing something intentionally and on purpose. *Id*. at 92. The State asked the jury, "how do we know it was on purpose?" and highlighted the evidence that immediately after Salinas told Day "you're going to have to kill me to take my stuff," he shot her several times at point blank range. *Id*. The State later reiterated that the evidence that Day shot Salinas six times in the chest and back and then left her to die demonstrated that Day wanted to kill Salinas. *Id*. at 93-94.

[10]     In his closing argument, Day's counsel argued that the State had failed to prove both his identity as the shooter and his intent to kill. *Id*. at 96-98. As to intent, counsel advised the jury that the State needed to prove "specific intent" and that what the jury saw in the video "is a reaction. It's not a plan. It's not a conscious objective. It is simply reacting to the situation that the shooter found himself in." *Id*. at 98-99. Day's counsel argued that there was no "conscious objective" to kill Salinas, that Day's "objective" was to "snatch some weed" and get away safely, and that this "objective" continued through the incident. *Id*. at 99-100.

[11]     In its rebuttal argument, the State argued that it "defie[d] logic" that someone could point a gun at another and fire it at the person's chest and back at close range and not "intend to kill them." *Id*. at 102. The State alleged that Day "intended to kill her" and concluded its argument by emphasizing that, "when [Day] took those two steps toward [Salinas] and started firing at her, raising the

gun and pointing it at her and shooting at her point blank and then leaving her to die, absolutely that's conscious intent." *Id*. at 102-03.

[12] The jury found Day guilty as charged. *Id*. at 116. The trial court entered judgment only as to the Level 1 felony attempted murder conviction due to double jeopardy concerns and sentenced Day to forty years in the Department of Correction. *Id*. at 127-28; *Appellant's Conf. App. Vol. 2* at 140. Day now appeals.

## Discussion and Decision

[13] Day argues that the trial court erred in instructing the jury. The manner of instructing a jury is left to the sound discretion of the trial court. *White v. State*, 25 N.E.3d 107, 126 (Ind. Ct. App. 2014) (citing *Albores v. State,* 987 N.E.2d 98, 99 (Ind. Ct. App. 2013), *trans. denied*), *trans. denied*, *cert. denied*, 136 S. Ct. 595 (2015)*.* "When reviewing a trial court's decision to refuse or give jury instructions, this Court 'considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given.'" *Id*. (quoting *Watson v. State,* 972 N.E.2d 378, 383 (Ind. Ct. App. 2012)). Day challenges the attempted murder instruction given to the jury, which provided:

> To convict the defendant of Count I, Attempted Murder, a Level 1 felony, the State must have proven each of the following elements beyond a reasonable doubt:

1. The defendant, Xavier Wesley Day,

2. acting with the conscious purpose of killing Faith Salinas,

3. did touch Faith Salinas with a deadly weapon, to-wit: shot Faith Salinas,

4. which was conduct constituting a substantial step toward the commission of the intended crime of killing Faith Salinas.

*Appellant's Conf. App. Vol. 2* at 98.

[14] Day did not object to this instruction at trial. Generally, where a defendant fails to object to a jury instruction or fails to tender alternate instructions, the defendant's claim of error on appeal is waived. *Barthalow v. State*, 119 N.E.3d 204, 211 (Ind. Ct. App. 2019). However, we will consider a defendant's argument that the error constituted fundamental error. *Staley v. State,* 895 N.E.2d 1245, 1248 (Ind. Ct. App. 2008), *trans. denied.* "This exception to the general rule requiring a contemporaneous objection is narrow, providing relief only in 'egregious circumstances' that made a fair trial impossible." *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016). "An error may be fundamental and thus not subject to waiver, if it is a 'substantial blatant violation of basic principles.'" *Barthalow*, 119 N.E.3d at 211 (quoting *Moreland v. State*, 701 N.E.2d 288, 294 (Ind. Ct. App. 1998) (internal quotation omitted)). The error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.*

Day argues that the trial court committed fundamental error in instructing the jury as to the charge of attempted murder. He contends that the instruction given containing the elements of the crime was erroneous because it did not inform the jury that the State must prove beyond a reasonable doubt that "the defendant, with the specific intent to kill the victim engaged in conduct constituting a substantial step toward such killing." *Appellant's Br*. at 8 (citing *Rosales v. State*, 23 N.E.3d 8 (Ind. 2015)). Day asserts that, instead of using the language "specific intent to kill," the trial court's instruction used "conscious purpose," which constituted fundamental error. He maintains that, because the Indiana Pattern Jury Instruction for attempted murder uses the language "specific intent to kill," it was fundamental error to not use such language.

In *Spradlin v. State,* 569 N.E.2d 948 (Ind. 1991), the Indiana Supreme Court determined that an attempted murder instruction "which purports to set forth the elements which must be proven in order to convict of the crime of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with the intent to kill the victim, engaged in conduct which was a substantial step toward such killing." *Id*. at 950. A jury should not be instructed that a "knowing" mens rea is sufficient to establish guilt of attempted murder. *Clay v. State*, 766 N.E.2d 33, 36 (Ind. Ct. App. 2002). Error in an attempted murder instruction does not rise to the level of fundamental error where either 1) the instructions as a whole sufficiently inform the jury of the requirement of intent to kill; and/or 2) the intent of the perpetrator was not a central issue at trial. *Id*.

[17] Here, the instruction at issue did not contain the term "knowingly" at all and instructed the jury that it had to find Day acted "with the conscious purpose of killing" Salinas and that he engaged in a substantial step toward his "intended crime of killing" Salinas. *Appellant's Conf. App. 2* at 98. In *Clay*, this court held that the meaning of the phrase "conscious purpose" is equivalent to the mens rea of "specific intent" and that there is no functional difference between an instruction that uses the language "conscious purpose" to kill and one that uses the language "specific intent" to kill because the terms have the same meaning. 766 N.E.2d at 37; *see also Elliott v. State*, 786 N.E.2d 799, 802 (Ind. Ct. App. 2003) (same). Therefore, the use of the phrase "conscious purpose" in an attempted murder instruction does not constitute fundamental error because it has the same meaning as "specific intent" and informs the jury that the State must prove that the defendant intended to kill the victim. *See Elliott*, 786 N.E.2d at 802; *Clay*, 766 N.E.2d at 37.

[18] The jury instruction challenged by Day in the present case is virtually identical to the language found to be proper in both *Clay* and *Elliott*. The attempted murder instruction given by the trial court informed the jury that the State had to prove that Day acted "with the *conscious purpose of killing*" Salinas and that he shot her, which was conduct that constituted "a substantial step toward the commission of the *intended crime of killing*" Salinas. *Appellant's Conf. App. Vol. 2* at 98 (emphasis added). This jury instruction, as a whole, adequately informed the jury that the State was required to prove that Day had the specific intent to

kill Salinas.  The trial court did not commit fundamental error when it gave the jury instruction at issue.

[19]    Affirmed.

Najam, J., and Brown, J., concur.