## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 14 2019, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Anne Murray Burgess
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Willie J. Washington,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

August 14, 2019

Court of Appeals Case No.
19A-PC-473

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D06-1607-PC-84

**Bailey, Judge.**

# Case Summary

[1] Willie J. Washington ("Washington") appeals the denial of his petition for post-conviction relief following his convictions for Corrupt Business Influence, a Class C felony ("Count I"),[1] and twenty counts of Forgery, all Class C felonies.[2] Washington presents two issues for our review, which we restate as whether he was denied the effective assistance of trial and appellate counsel. We affirm.

# Facts and Procedural History

[2] The relevant facts were recited by a panel of this Court in Washington's direct appeal:

> During the summer of 2012, Washington prepared counterfeit payroll checks. The names of the companies listed as payors on the forged checks, which were chosen by Washington, included Bain, Tower, and Master Spa. Angela Fett knew Washington and she recruited others to cash the forged checks. Washington told Fett to give the person that actually went into the stores $125 for each check that they cashed. Fett took her crew to Kroger and Walmart to cash the checks because Washington "said that they are the only ones that would read their – whatever was in their register would – some of the ones would read the account numbers at the bottom." Transcript at 88. Washington also told Fett to cash the checks on Friday after 5:00 because the stores would be busy with a large number of checks being cashed. At some point in 2012, Kathy Fox, the district loss prevention

---

[1] Ind. Code § 35-45-6-2. At all times, we refer to the versions of the statutes in effect at the time of Washington's offenses.

[2] I.C. § 35-43-5-2(b).

manager for the Kroger Company, learned that some counterfeit payroll checks with Bain listed as the payor were cashed at Kroger stores.

During the summer of 2012, Lieutenant Timothy Selvia of the Fort Wayne Police Department began investigating reports of forged and counterfeited payroll checks. These counterfeit checks were being cashed at Kroger, Walmart, Summit Markets, City Markets, and Save-A-Lot. The investigation led to the arrest of a woman who admitted her involvement and stated that her "crew leader" was a woman by the name of "Angie." *Id.* at 130. Lieutenant Selvia eventually learned the person's identity to be Fett. During the course of the investigation, Lieutenant Selvia was able to link a little over forty checks with the organization in which Fett was the crew leader.

After Fett was charged, she informed police that she wanted to make a statement. Fett stated that Washington was always the one who provided her with the forged, counterfeit checks, and that he "was still contacting [her] about putting another crew together to pass more forged or counterfeit checks." *Id.* at 91. Fett agreed to cooperate with the investigation of Washington.

On June 13, 2013, police provided Fett with a list of fictitious names, and she copied the names in her own handwriting. Fett then telephoned Washington, and he told her to drop off the list of names at his mother's house on South Hanna Street. Police searched Fett and her vehicle before following her to the South Hanna Street address. At the address, Fett remained in her vehicle while Washington left the home and approached Fett's vehicle. Fett handed Washington the list of fictitious names. Washington instructed Fett to return to pick up the forged and counterfeited checks in a couple of hours. Washington sent Fett a text message informing her that the checks were ready, Fett then returned to Washington's location, and Washington gave her an envelope containing twenty counterfeit checks that listed

Book Daddy Enterprises as the payor. Fett later handed the envelope to Lieutenant Selvia.

A search warrant was executed at the South Hanna Street address. A laptop computer, a desktop computer, a couple of printers, a couple of cell phones and various multi-media storage devices were confiscated. Several images of payroll checks, signatures from payroll checks, and logos from payroll checks were found on the desktop computer. Included among the check images were logos or specific checks of businesses. Also found on the computer were several signatures, including one for "Lisa Marger," a name which appeared on each of the forged, counterfeit checks Washington gave to Fett on June 13, 2013. *Id.* at 160; State's Exhibits 9-28.

The State charged Washington with Count I, corrupt business influence as a class C felony for his acts between June 1, 2012, and June 14, 2013; and Counts II through XXI, forgery as class C felonies for his acts on June 13, 2013. A jury found Washington guilty as charged. At the sentencing hearing, the court noted Washington's criminal record and his failed efforts at rehabilitation as aggravating factors, and noted there were multiple victims of Washington's offenses. The court found no mitigating factors and sentenced Washington to eight years for Count I, corrupt business influence as a class C felony, and six years on each of Counts II through XXI, forgery as class C felonies. The court ordered that the sentence for Count II be served consecutive to Count I and that Counts II through XXI be served concurrent with each other for an aggregate sentence of fourteen years.

*Washington v. State*, No. 02A03-1310-CR-427, slip. op. at 2-4 (Ind. Ct. App. Jun. 24, 2014), *trans. denied*.

[3] On direct appeal, Washington challenged his sentence, raising the issues of whether the trial court abused its discretion in sentencing him and whether his sentence was inappropriate in light of the nature of his offenses and his character. *Id*. at 2. This Court affirmed. *Id*.

[4] On July 25, 2016, Washington, *pro se*, filed a petition for post-conviction relief, which was amended by counsel on April 10, 2018. The post-conviction court held an evidentiary hearing on the amended petition on July 20, 2018, at which Washington's appellate counsel testified. In lieu of live testimony at the hearing, an evidentiary deposition of Washington's trial counsel was conducted on September 5, 2018.

[5] On January 31, 2019, the post-conviction court entered its written order denying Washington's petition. Washington now appeals.

# Discussion and Decision

## *Standard of Review*

[6] The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013). When appealing the denial of post-conviction relief, the petitioner appeals from a negative judgment. *Wilkes*, 984 N.E.2d at 1240 (citing *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000)). Thus, the appellant must establish that the evidence as a whole unmistakably and unerringly points to a conclusion contrary to the post-

conviction court's decision. *Id.* We review the post-conviction court's factual findings for clear error and owe no deference to its conclusions of law. *Id.*

## *Effectiveness of Trial Counsel*

[7] Washington contends he was denied the effective assistance of trial counsel in two respects: (1) by failing to request a jury instruction on the definition of "pattern of racketeering activity," and (2) by failing to provide a specific basis for his objection to testimony that he allegedly forged checks in 2004.[3]

[8] The Sixth Amendment to the U.S. Constitution guarantees a person accused of a crime the right to the assistance of counsel. U.S. Const. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[9] Effectiveness of counsel is a mixed question of law and fact. *Id*. at 698. We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland*. *Id*. To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and resulting prejudice. *Dobbins v. State*, 721 N.E.2d 867, 873 (Ind. 1999) (citing *Strickland*, 466 U.S. at 687). Deficient performance is that which falls below an

---

[3] Washington also argues that counsel was ineffective for failing to object to testimony about similar conduct in 2007; however, Washington did not raise the issue of the 2007 activity in his petition or amended petition, and therefore the issue is waived. *See Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001) ("Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal.").

objective standard of reasonableness. *Strickland*, 466 U.S. at 687; *see also Douglas v. State*, 663 N.E.2d 1153, 1154 (Ind. 1996). Prejudice exists when a claimant demonstrates "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Cook v. State*, 675 N.E.2d 687, 692 (Ind. 1996). The two prongs of the *Strickland* test are separate and independent inquiries. *Strickland*, 466 U.S. at 697. A court deciding an ineffective assistance claim need not address both components of the inquiry if the defendant makes an insufficient showing on one. *Id*. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id*.

## (1) Jury Instruction

[10] Washington first contends that he was denied the effective assistance of trial counsel when counsel failed to tender a jury instruction on the definition of "pattern of racketeering activity." He argues that had the jury been instructed on the meaning of the phrase, there was a reasonable probability that he would not have been convicted of corrupt business influence.

[11] As to Count I, the State charged:

> Sometime during the period of time between the 1st day of June, 2012 and the 14th day of June, 2013, in the County of Allen and in the State of Indiana, said defendant, Willie J. Washington, while associated with an enterprise, to wit: a group of individuals

associated in fact, did knowingly or intentionally conduct or otherwise participate in the activities of the enterprise through a pattern of racketeering activity, involving obtaining, or attempts to obtain, cash from local retail establishments through the uttering of forged payroll checks . . . .

(Prior App. 33.)

[12] Indiana Code section 35-45-6-2(3) provides, in relevant part: "A person . . . who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity; commits corrupt business influence, a Class C felony." An "enterprise" includes "a union, an association, or a group, whether a legal entity or merely associated in fact." I.C. § 35-45-6-1(c)(2). The phrase "racketeering activity" means "to commit, to attempt to commit, to conspire to commit a violation of, or aiding and abetting in a violation of" a laundry-list of offenses, including forgery.[4] I.C. § 35-45-6-1(e)(16).

[13] The statute also defines "pattern of racketeering activity:"

---

[4] A person who, with intent to defraud, makes, utters, or possesses a written instrument in such a manner that it purports to have been made:

  (1) by another person;

  (2) at another time;

  (3) with different provisions; or

  (4) by authority of one who did not give authority;

commits forgery, a Class C felony. I.C. § 35-43-5-2(b).

"Pattern of racketeering activity" means engaging in at least two (2) incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents. However, the incidents are a pattern of racketeering activity only if at least one (1) of the incidents occurred after August 31, 1980, and if the last of the incidents occurred within five (5) years after a prior incident of racketeering activity.

I.C. § 35-45-6-1(d).

At trial, the trial court gave preliminary and final jury instructions on the offense of corrupt business influence as follows:

> To convict the Defendant of Count 1, the State must have proved each of the following beyond a reasonable doubt:
>
> The Defendant, Willie J. Washington,
>
> 1. was employed by or associated with an enterprise, and
>
> 2. knowingly or intentionally,
>
> 3. conducted or otherwise participated in the activities of that enterprise,
>
> 4. through a pattern of racketeering activity, involving obtaining, or attempts to obtain, cash from local retail establishments through the uttering of forged payroll checks.

(Prior App. 83, 121; Trial Tr. 16-17, 180-81.) The trial court also provided the jury with instructions on the definitions of "enterprise" and "racketeering activity." However, the court did not instruct the jury – and trial counsel did not tender a proposed instruction – on the definition of "pattern of racketeering activity." Thus, the jury was properly instructed on the essential elements of the crime, but not the definition of a term of art.

[15] Trial counsel testified at the post-conviction hearing that Washington's corrupt business influence charge "may have been the only one I had actually tried to a jury" (PCR App. Vol. II 83), and knowing what he knows now, he "[p]robably" would have requested the final instructions included a definition of "pattern of racketeering activity." (PCR App. Vol. II 94.) The post-conviction court concluded, however, there was "no reasonable probability that Petitioner would have been acquitted of corrupt business influence if the jury had been properly instructed on the definition of a 'pattern of racketeering activity'" and thus trial counsel "cannot be found ineffective for failing to tender a proper instruction[.]" (PCR App. Vol. II 222.)

[16] Washington argues that he suffered prejudice from the omission of the definition of "pattern of racketeering activity" because the definition required the jury to find that he participated in at least two similar incidents of forgery within five years. According to Washington, although the jury heard evidence that he was involved in at least two incidents of forging checks in a five-year time frame – the sting operation in 2013 and the forged checks passed in the summer of 2012 – only the forgeries committed in 2013 were corroborated by

evidence independent of the testimony of the State's cooperating witness, Angela Fett ("Fett"), whose credibility was impeached at trial. Thus, Washington argues that "had the jury received the correct instruction, there is a reasonable probability the jury would have rejected the witness's testimony as to the uncorroborated scheme" in 2012 (Appellant's Br. 13) and acquitted him of Count I for lack of reliable evidence of a second incident within five years.

[17] However, we disagree with Washington's contention that the State presented no evidence, other than Fett's self-serving testimony, that linked Washington to the checks forged in the summer of 2012. Kathy Fox, district loss prevention manager for Kroger Company, testified that several counterfeit Bain & Associates payroll checks were cashed in Kroger stores during the summer of 2012. The State introduced into evidence one of those forged checks as Exhibit 8. Fort Wayne Police Department ("FWPD") Lieutenant Timothy Selvia ("Lieutenant Selvia") then testified that he investigated a little over forty forged payroll checks drawn on the accounts of companies including Bain & Associates, Master Spas, and Tower Staffing that were cashed at Kroger, Walmart, and other stores in Allen County during June to September 2012. When asked whether Exhibit 8 was representative of the other checks, Lieutenant Selvia testified that the "names and dates would change . . . and . . . who the issuers were and the banks, but they were always very, very similar in the way they were laid out." (Trial Tr. 129.) Finally, FWPD Detective John Helmsing, a computer forensics examiner and analyst, testified that in examining a computer seized from the South Hanna Street address after the

2013 sting operation, he discovered image files of payroll checks or corporate logos associated with the companies Tower Staffing, Bain & Associates, and Master Spas, among several others. Also, a software program called Avenquest, which featured the ability to write and produce digital or computer-generated payroll checks, was loaded on one of the seized computers.

[18] All of this evidence tended to link Washington to the forged checks passed in the summer of 2012, independent of Fett's testimony that Washington gave her forged payroll checks from companies including Tower Staffing, Bain, and Master Spas to cash at Kroger and Walmart during that time frame. Thus, even if the jury (1) completely discredited Fett's testimony that she received the 2012 forged checks from Washington, and (2) was instructed that a "pattern" required at least two similar incidents of racketeering activity within five years, Washington has failed to demonstrate that there was a reasonable probability that the jury would have acquitted him of Count I, as the conviction was clearly sustained by other evidence.[5] Thus Washington has not shown he suffered prejudice from the omission of a definition of "pattern of racketeering activity" due to a lack of corroborating evidence.

---

[5] We note that although Washington refers to the 2012 forgeries as a single incident, the evidence established that approximately forty forged payroll checks with similar appearance but representing multiple businesses were cashed at various stores over a period of four months in 2012. This evidence tends to suggest that there were multiple instances of racketeering activity that occurred in 2012, not a single incident.

## (2) Admission of Evidence

[19] Washington next argues that trial counsel was ineffective when he failed to object on a specific basis to Fett's testimony that she received forged payroll checks from Washington in 2004. At trial, Fett testified that she had "a lot of felony convictions," including for forgery (Trial Tr. 83), and on cross-examination clarified that these convictions included passing forged payroll checks in 2004. (Trial Tr. 104-05.) After her testimony, the jury submitted the following question: "Who made the payroll checks for this witness before in 2004 to 2007 when she was charged in the past?" (Trial Tr. 120-21.) Defense counsel objected, noting "I know that what she's going to say is that he did, but he was never charged nor investigated." (Trial Tr. 121.) The trial court permitted the question, and Fett testified that Washington gave her the checks in 2004.

[20] "To demonstrate ineffective assistance of counsel for failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by counsel's failure to make an objection." *McKnight v. State*, 1 N.E.3d 193, 202 (Ind. Ct. App. 2013). Here, counsel did object to the admission of evidence, but failed to articulate a specific basis for the objection. Washington contends that the evidence should have been excluded as (1) irrelevant under Indiana Evidence Rule 401 because the incident of forgery in 2004 was outside the five-year window to establish a pattern of racketeering

activity,[6] and (2) unfairly prejudicial under Indiana Evidence Rules 403 and 404(b).[7] He argues that he was prejudiced by counsel's failure to object on these specific grounds because the jury could have impermissibly relied on character evidence to infer he was guilty in this case, or based his conviction on Count I on an incident that occurred outside the five-year time frame.

[21] However, even if the objection would have been sustained, Fett's unsubstantiated claim that Washington gave her forged checks in 2004 was merely cumulative of the other evidence that Washington was Fett's source for forged checks. Further, on cross examination, Fett acknowledged that she had never formally testified before that Washington had given her checks in 2004, and only informed law enforcement of the allegation in 2013 after her arrest. Given the independent evidence establishing that Washington committed multiple acts of forgery in 2012 and 2013, it is unlikely Fett's allegations about Washington's activities in 2004 had a substantial impact on the jury's verdict. Washington has not demonstrated that he suffered prejudice from Fett's testimony regarding acts he allegedly committed in 2004.

---

[6] Indiana Evidence Rule 401 provides: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Generally, irrelevant evidence is not admissible. Ind. Evidence Rule 402.

[7] A court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. Evid. R. 403. Further, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Evid. R. 404(b)(1).

[22]    In sum, Washington has failed to demonstrate a reasonable probability that the outcome would have been different had trial counsel tendered a proposed instruction on the definition of "pattern of racketeering activity" and objected to irrelevant evidence. Accordingly, the post-conviction court did not err in concluding that Washington failed to show that trial counsel was ineffective.

## *Effectiveness of Appellate Counsel*

[23]    A defendant is entitled to the effective assistance of appellate counsel. *Stevens v. State*, 770 N.E.2d 739, 760 (Ind. 2002). The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel. *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). That is, the petitioner must show both that appellate counsel's performance was deficient and the deficiency resulted in prejudice. *Id*. "Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well." *Id*. Here, Washington's claim falls into the second category, as he contends that appellate counsel failed to raise the obvious issue of incomplete jury instructions as fundamental error.

[24]    The decision of what issues to raise on appeal is one of the most important strategic decisions to be made by appellate counsel. *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997). Ineffectiveness is rarely found when the issue is the failure to raise a claim on direct appeal. *Id*. When reviewing a claim that appellate counsel was ineffective for failing to raise an issue on appeal, we examine whether the unraised issues are (1) significant and obvious from the

face of the record, and (2) clearly stronger than the raised issues. *Timberlake v. State*, 753 N.E.2d 591, 605-06 (Ind. 2001). If the analysis under this test demonstrates deficient performance, then we examine whether the unraised issues clearly would have been more likely to result in reversal. *Reed*, 856 N.E.2d at 1195.

[25] Washington argues that appellate counsel should have claimed fundamental error occurred when trial counsel did not request a jury instruction on "pattern of racketeering activity." The fundamental error doctrine

> permits an appellate court to review a "claim that has been waived by a defendant's failure to raise a contemporaneous objection." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). "Fundamental error is defined as an error so prejudicial to the rights of a defendant that a fair trial is rendered impossible." *Perez v. State*, 872 N.E.2d 208, 210 (Ind. Ct. App. 2007), *trans. denied*. The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006).

*Benefield v. State*, 945 N.E.2d 791, 801 (Ind. Ct. App. 2011).

[26] At the post-conviction hearing, appellate counsel testified that he scrutinized the jury instructions, considered raising the issue of a missing definition, but deemed the issue waived. Further, he testified that in his experience it is "very difficult to prove fundamental error" on direct appeal. (PCR Tr. Vol. II 10.)

[27]     To support his assertion on appeal that "the doctrine of fundamental error as it applies to flawed instructions has not been obliterated" (Appellant's Br. 23), Washington cites to three Indiana appellate court cases holding that an error in jury instructions constituted fundamental error. Washington then baldly concludes, without discussion of these cases, that "[r]aising the issue of the missing element on appeal would have led to the reversal of [his] conviction[.]" (Appellant's Br. 24.)

[28]     However, an error in a jury instruction does not always rise to the level of fundamental error and require reversal. *See, e.g., Barthalow v. State*, 119 N.E.3d 204, 211-12 (Ind. Ct. App. 2019) (failure to include the definition of "bodily injury" in jury instructions was not fundamental error in light of all relevant information given to the jury); *Clemons v. State*, 83 N.E.3d 104, 108 (Ind. Ct. App. 2017) (failure to include definition of "serious bodily injury" in jury instructions was not fundamental error where jury could rely on its "collective common sense and everyday experiences" to interpret the meaning of the phrase in context), *trans. denied*; *Winkleman v. State*, 22 N.E.3d 844, 850 (Ind. Ct. App. 2014) (jury instructions that omitted an element of the offense not fundamental error where the omitted element was not a central issue at trial), *trans. denied*.

[29]     Washington fails to develop an argument as to why the absence of a definition of "pattern of racketeering activity" in the jury instructions in his case would have risen to the level of fundamental error and required reversal on direct appeal. Accordingly, the issue is waived. Ind. Appellate Rule 46(A)(8)(a);

*Davis v. State*, 835 N.E.2d 1102, 1113 ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*.

# Conclusion

[30]    Washington has failed to demonstrate that he was denied the effective assistance of trial and appellate counsel.  The post-conviction court properly denied the petition for post-conviction relief.

[31]    Affirmed.


Najam, J., and May, J., concur.