

**FILED**

Dec 05 2019, 6:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Tyler E. Burgauer
Samuel J. Beasley
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Milo,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 5, 2019<br><br>Court of Appeals Case No.<br>19A-CR-751<br><br>Appeal from the Delaware Circuit<br>Court<br><br>The Honorable Thomas A.<br>Cannon, Jr., Judge<br><br>Trial Court Cause No.<br>18C05-1801-F3-3 |

**Mathias, Judge.**

[1]     Following a jury trial in Delaware Circuit Court, Christopher Milo ("Milo") was convicted of Level 3 felony burglary. Milo appeals and presents two issues, which we restate as: (1) whether the trial court erred when it reconsidered its earlier grant of Milo's motion for a directed verdict, which was based on a flaw

in the charging information, and (2) whether the trial court's jury instruction regarding the offense of burglary constituted fundamental error.

[2] We affirm.

## Facts and Procedural History

[3] During November and December 2017, Milo and his girlfriend Miah Hale ("Hale") were homeless and living in the apartment of their acquaintance, Anthony Powers ("Powers"). The property manager for the apartments was Jackie Sailers ("Sailers"). When they moved into Powers's apartment, Milo and Hale brought their cats with them. The terms of Powers's lease, however, forbade the presence of pets in the apartment. When Milo and Hale stopped living in Powers's apartment, they left their cats despite Powers's requests to take the cats with them. Powers eventually took the cats to an animal shelter.

[4] On the morning of December 29, 2017, Milo and Hale went to Powers's apartment to pick up their cats. Powers lied and told them that his landlord had taken the cats. This infuriated Milo and Hale, who left Powers's apartment to confront Sailers. Sailers told the couple that he had not taken the cats. Milo then stated that he was going to go "whoop [Powers]'s ass." Tr. pp. 44–45.

[5] At approximately 11:00 a.m., Milo and Hale broke through Powers's exterior door and entered his apartment. Milo attacked Powers, beating and kicking him repeatedly in the eye, head, back, and shoulders as Powers attempted to escape. All the while, Hale stood at the doorway and screamed at Powers. The attack caused serious injury to Powers: his right eye swelled shut, he had ringing in his

ears, and he had scrapes and bruises. The swelling of his eye aggravated a pre-existing problem with Powers's optic nerve, and Powers eventually lost all sight in his right eye.

[6] On January 9, 2018, the State charged Milo with Level 3 felony burglary, Level 6 felony residential entry, and Class A misdemeanor battery. The count alleging burglary provided:

> [On] or about December 29, 2017 in Delaware County, State of Indiana, Christopher J. Milo did break and enter the building or structure of Anthony W. Powers, Sr., with the intent to commit felony therein, to-wit: Battery; said act resulting in bodily injury to Anthony W. Powers, Sr. . . .

Appellant's App. p. 3.

[7] A jury trial was held on February 12, 2019. At the close of the State's case-in-chief, Milo's counsel moved for what she described as a directed verdict, stating:

> Judge, at this point in time as to count one I'm gonna move for a directed verdict, as—if you look at the charging information in count one they have in their charging information they have that Mr. Milo [did] break and enter the building or structure of Mr. Powers with the intent to commit the felony therein to wit: battery, they have actually put what the underlying felony is. Now, if you look in count three, battery is not a felony, it's never been raised to the level of a felony, it has always stayed as a misdemeanor, they didn't charge it as a felony, they've not elevated it because of priors or anything like that, so if you start

with battery [sic[1]] as a level five felony which where you have to start with and it says with the intent to commit a felony therein, so in order to get to a level three which is about—has to do with—it gets elevated to a three because of a battery, you still have to get past the level five to be elevated, and in the level five it states while committing a felony therein, battery is not a felony so you don't even get to level three. So, due to that, Judge, I'm asking for a directed verdict that the charging information is insufficient on its face.

Tr. p. 139.[2]

[8] The State responded that Hale had stated that she and Milo intended to cause serious bodily injury to Powers when they broke into his apartment, which would mean that they intended to commit felony-level battery, and that the trial court should therefore deny Milo's motion. Milo's counsel responded:

First of all, Judge, that was [Hale]'s intent was to cause serious bodily injury whether it was through Mr. Milo or not we'll never know, second of all, all they had to do was charge battery as serious bodily injury or as moderate bodily injury and it would have elevated it to a felony in the charging information, they chose not to do that, this case has pended for over a year, they've not caught it and you can't go by the intent of somebody else to know what his intent is, so if they thought it was his intent to cause serious bodily injury they should have charged him that way, but the bottom line is there's no underlying felony and they can't just infer a felony based on what somebody else says.

---

[1] It is apparent from context that Milo's counsel meant to say "burglary," not "battery."

[2] To aid in the ease of reading, we have removed verbal hesitation markers such as "uh" and "um" from the transcript.

*Id.* at 140. The trial court granted Milo's motion, ruling, "[T]he charge is what it is, battery[,] said act resulting in bodily injury and that is a misdemeanor not a felony, motion for directed verdict as to count one is granted." *Id.* at 141. The court then recessed.

[9] When the court reconvened, the prosecuting attorney requested that the trial court reconsider its earlier ruling.[3] The prosecuting attorney argued that Milo's motion, as a challenge to the charging information rather than the sufficiency of the evidence, was actually a motion to dismiss rather than a motion for a directed verdict. And since Milo did not make his motion until the middle of the trial, the State argued that his motion to dismiss was untimely and should have been denied. After hearing further argument from the parties, the trial court took the matter under advisement and recessed again. Upon readjourning, the trial court ruled from the bench as follows:

> [The] Court has had an opportunity to research [Indiana Code section 35-34-1-4(a)(1)], and as—how it is applicable and first of all the Court believes that that statute is applicable for the nature of the argument made by Defense Counsel concerning the deficiency of the charge and the evidence, and I'm going to grant the State's motion to correct error based upon that cited statute[.] [T]here is sufficient evidence in the record, where the State has met its burden before the jury to prove the elements of the offense of burglary as a level three felony such that it is an issue for the

---

[3] The prosecuting attorney referred to this request as a "motion to correct error." Tr. p. 142. However, as no final judgment had yet been entered, this motion is properly considered as a motion to reconsider. *See Citizens Indus. Grp. v. Heartland Gas Pipeline, LLC*, 856 N.E.2d 734, 737 (Ind. Ct. App. 2006) (noting that a party may file a motion to reconsider while the case is *in fieri* and that a motion to correct error is proper after the entry of final judgment), *trans. denied.*

trier of fact to decide as opposed to the Court[.] [T]he argument on the motion went to the issue of intent and how that is charged in the charging information, arguing that the intent that was charged was to commit a felony—well to commit a felony battery but the—because of count three it really was misdemeanor battery but that again, the argument as to the intent is a—based on the evidence presented here is a question for the jury to decide whether the defendant had the intent to commit a felony, in this case battery, so for those reasons I am going to grant the motion to correct errors[.] [I] believe my abrupt ruling on the motion for directed verdict was incorrect[.]

Tr. pp. 146. At the conclusion of the trial, the jury found Milo guilty as charged.

[10] At a sentencing hearing held on March 7, 2019, the trial court entered judgment of conviction only on the burglary count on double jeopardy grounds. The court then sentenced Milo to twelve years on the burglary conviction, with nine years executed and three years suspended to probation. Milo now appeals.

## I. The Trial Court's Ruling on Milo's Motion Was Not an Acquittal for Double Jeopardy Purposes

[11] Milo first contends that the trial court's reconsideration of its earlier ruling granting Milo's motion for a "directed verdict" violates the constitutional prohibition against double jeopardy. According to Milo, the trial court's grant of his motion acted as an acquittal, and he cannot be subsequently tried on the same grounds.

*A. Double Jeopardy*

[12] Milo is correct that the Fifth Amendment to the United States Constitution prohibits a second prosecution for the same offense after an acquittal.[4] *Baca v. State*, 122 N.E.3d 1019, 1020–21 (Ind. Ct. App. 2019) (citing *G.K. v. State*, 104 N.E.3d 598, 600 (Ind. Ct. App. 2018)). Milo is also correct that a directed verdict entered on the grounds that the State failed to prove a material element of the offense acts as an acquittal. *Elkins v. State*, 754 N.E.2d 643, 644 (Ind. Ct. App. 2001) (citing *Williams v. State*, 634 N.E.2d 849, 853 (Ind. Ct. App. 1994)), *trans. denied*.[5] Indeed, double jeopardy bars retrial following a court-ordered acquittal "even if the acquittal is 'based upon an egregiously erroneous foundation.'" *Evans v. Michigan*, 568 U.S. 313, 318 (2013) (quoting *Fong Foo v. United States*, 369 U.S. 141, 143 (1962)).

[13] To Milo, then, this case is simple: he moved for a directed verdict, and the trial court granted his motion. Therefore, he argues, the trial court could not reconsider its grant of his motion, and he should not have been subject to continued prosecution on the burglary charge. The State argues that the

---

[4] The *Baca* court noted that a second prosecution following an acquittal is also prohibited by Article 1, Section 14 of the Indiana Constitution. Milo, however, makes no argument under the Indiana Constitution.

[5] Both of these cases involved the State's failure to prove venue. In *Neff v. State*, a panel of this court held that "permitting retrial of a defendant in the proper county after the State failed to prove venue in another county is consistent with double jeopardy jurisprudence," effectively disagreeing with *Williams* and *Elkins* with regard to the failure to prove venue. 915 N.E.2d 1026, 1036 (Ind. Ct. App. 2009), *adhered to on reh'g*, 922 N.E.2d 44 (Ind. Ct. App. 2010), *trans. denied*. Regardless, the proposition that a grant of a motion for directed verdict based on the State's failure to prove an essential element acts an acquittal remains valid. *See State v. Casada*, 825 N.E.2d 936, 940 (Ind. Ct. App. 2005) (holding that despite trial court's erroneous grant of defendant's judgment on the evidence, defendant could not be retried because the grant acted as an acquittal for purposes of double jeopardy).

substance of Milo's motion, and the trial court's ruling thereon, were not based on a resolution of any of the factual elements of the offense charged. It argues instead that Milo's motion, although styled as one for a "directed verdict," was in actuality a motion to dismiss attacking the validity of the charging information and that the trial court's grant of this motion therefore did not act as an acquittal.

[14] To determine the nature of the trial court's ruling on Milo's motion, we note that:

> [w]hether the trial court's action constitutes acquittal for purposes of double jeopardy is not to be ascertained from the form of the judge's action, although the form of the order entered by the trial court should not be ignored, *but rather by determining whether the substance of the ruling, whatever its label, actually represents resolution, correct or not, of some or all of the factual elements of the offense charged*.

*Elkins*, 754 N.E.2d at 644 (emphasis added) (citing *Williams*, 634 N.E.2d at 853).

[15] We must therefore determine whether the substance of the trial court's ruling acted as a resolution of some or all of the factual elements of the charged crime of burglary. To do so, we first note the distinction between a motion for a directed verdict and a motion to dismiss. We also set forth the elements of the crimes of burglary and battery. Then, we look to the nature of Milo's motion, and, more importantly, the substance of the trial court's ruling itself.

*B.  Motion for a Directed Verdict Compared to a Motion to Dismiss*

[16]  A motion for a directed verdict/judgment on the evidence is governed by Indiana Trial Rule 50, which provides in relevant part:

> **Judgment on the Evidence—How Raised—Effect**. Where all or some of the issues in a case tried before a jury or an advisory jury *are not supported by sufficient evidence* or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict. . . .

T.R. 50(A) (emphasis added). When a defendant moves for a directed verdict/judgment on the evidence, the trial court is required to grant the motion if: (1) the record is devoid of evidence on one or more elements of the offense; or (2) the evidence presented is without conflict and subject to only one inference, which is favorable to the defendant. *Pavlovich v. State*, 6 N.E.3d 969, 980 (Ind. Ct. App. 2014) (citing *Garcia v. State*, 979 N.E.2d 156, 157 (Ind. Ct. App. 2012)), *trans. denied*. And our review of a motion for a directed verdict/judgment on the evidence is the same as our review of a claim of insufficient evidence. *Id.*

[17]  In contrast, a motion to dismiss a charging information is governed by Indiana Code section 35-34-1-4, which provides in relevant part:

> (a) The court may, upon motion of the defendant, dismiss the indictment or information upon any of the following grounds:

(1) The indictment or information, or any count thereof, is defective under section 6 of this chapter [regarding a defective indictment or information].

\* \* \*

(5) The facts stated do not constitute an offense.

[18] When reviewing a ruling on a motion to dismiss a charging information, we take the facts alleged in the information as true. *Gutenstein v. State*, 59 N.E.3d 984, 994 (Ind. Ct. App. 2016) (citing *Pavlovich*, 6 N.E.3d at 974), *trans. denied*. "'Questions of fact to be decided at trial or facts constituting a defense are not properly raised by a motion to dismiss.'" *Id.* (quoting *State v. Isaacs*, 794 N.E.2d 1120, 1122 (Ind. Ct. App. 2003)). "It is only when an information is facially deficient in stating an alleged crime that dismissal for failure to state an offense is warranted." *Id.* (quoting *Pavlovich*, 6 N.E.3d at 969).

### C.    The Elements of Burglary and Battery

[19] Burglary occurs when one knowingly or intentionally breaks and enters into the building or structure of another person with the intent to commit theft or a felony therein. I.C. § 35-43-2-1. The crime of burglary is a Level 5 felony but is elevated to a Level 3 felony if it results in bodily injury to any person other than the defendant. *Id.* at §1(2).

[20] The crime of battery occurs when one knowingly or intentionally touches another person in a rude, insolent, or angry manner. I.C. § 35-42-2-1(c). Absent other circumstances, battery is a Class B misdemeanor. *Id.* Battery is a Class A misdemeanor if it results in bodily injury to any other person, *id.* at § 1(d)(1), a

Level 6 felony if it results in moderate bodily injury to any other person, *id.* at §
1(e)(1), and a Level 5 felony if it results in serious bodily injury to any other
person. *Id.* at § 1(g)(1).

[21] Here, the State charged Milo with Level 3 felony burglary resulting in bodily
injury as follows:

> [On] or about December 29, 2017 in Delaware County, State of
> Indiana, Christopher J. Milo did break and enter the building or
> structure of Anthony W. Powers, Sr. *with the intent to commit
> felony therein, to-wit: Battery*; said act resulting in bodily Injury to
> Anthony W. Powers, Sr. . . .

Appellant's App. p. 3. The State also charged Milo with Class A misdemeanor
battery causing bodily injury. *Id.* at 5.

### D. Milo's Motion and the Trial Court's Ruling Thereon

[22] In his motion to the trial court, Milo correctly noted that, to convict him of
burglary, the State was required to prove that he intended to commit a felony
when he broke into Powers's apartment. The charging information, however,
alleged only that he intended to commit "battery," which is not necessarily a
felony. Milo also noted that the State did not charge him with felony-level
battery in Count 3, but Class A misdemeanor battery. He therefore claimed that
"the charging information is insufficient on its face." Tr. p. 139. Milo did make
some argument that Hale's intent could not establish his own intent, but the
thrust of his argument went to the language of the charging information. More
importantly, when the trial court granted Milo's motion, it stated, "*the charge is*

*what it is, battery*[,] said act resulting in bodily injury *and that is a misdemeanor not a felony*, motion for directed verdict as to count one is granted." *Id.* at 141.

[23] Thus, the trial court granted Milo's motion not because the State failed to prove an essential element of the crime, i.e., Milo's intent to commit felony-level battery, but because of a deficiency in the charging information. Because the trial court's ruling was not a grant of a motion for a directed verdict, it did not act as an acquittal, and double jeopardy did not bar the trial court from reconsidering its ruling. *Cf. Baca*, 122 N.E.3d at 1022–23 (holding that trial court erred by granting State's motion to amend charge of child molesting by penetration to allege lesser-included offense of child molesting by fondling after granting defendant's motion for a directed verdict on this count based on grounds that the State failed to present any evidence of penetration).[6]

[24] We also hold that the trial court's reconsidered ruling on Milo's motion was not improper. The essence of Milo's motion was that the charging information was deficient because it did not adequately allege that he intended to commit a felony when he broke into Powers's apartment. It is well settled that "[t]he

---

[6] We also find Milo's citation to *Evans v. Michigan, supra*, to be unavailing. In that case, the trial court erroneously granted a motion for a directed verdict based on the State's failure to prove an element that the State was not, in fact, required to prove. *Evans*, 568 U.S. at 317. The Michigan courts held that, because the trial court's directed verdict was based on a legal error, double jeopardy did not bar retrial. *Id.* The *Evans* Court held that "[t]he trial court's judgment of acquittal resolved the question of Evans' guilt or innocence *as a matter of the sufficiency of the evidence*, not on unrelated procedural grounds. That judgment, 'however erroneous' it was, precludes reprosecution on this charge, and so should have barred the State's appeal as well." *Id.* at 324 (emphasis added). In contrast to *Evans*, the trial court here did not grant a motion for a directed verdict on grounds that the State failed to prove an element that it did not, in fact, have to prove. Instead, the trial court granted Milo's motion based on an allegedly defective charging information and then, upon further reflection, reversed its decision based on the untimeliness of Milo's motion. Accordingly, *Evans* is not controlling.

proper method to challenge deficiencies in a charging information is to file a motion to dismiss the information[.]" *Miller v. State*, 634 N.E.2d 57, 60 (Ind. Ct. App. 1994). Such a motion to dismiss must be filed no later than twenty days before the omnibus date. I.C. § 35-34-1-4(b)(1); *Chavez v. State*, 988 N.E.2d 1226, 1230 (Ind. Ct. App. 2013), *trans. denied*. Milo did not challenge the alleged defects in the charging information until after the State had rested its case-in-chief. Any claimed defect in the information is therefore waived. *See Truax v. State*, 856 N.E.2d 116, 123 (Ind. Ct. App. 2006) (holding that, because the defendant did not raise his challenge to the charging information until after the omnibus date, his argument that the information was defective was waived).

[25] Milo makes no argument that the trial court's denial of his motion was fundamental error. *See id.* (noting that failure to timely file a motion to dismiss an allegedly defective information waives the issue unless fundamental error occurs). Even if he did, he would not prevail. The charging information alleged that Milo broke into Powers's apartment "with the intent to commit [a] felony therein, to-wit: Battery; said act resulting in bodily injury to [Powers]." Appellant's App. p. 3. By alleging that Milo intended to commit "a felony therein, to-wit: Battery," the information sufficiently alleged that Milo intended to commit felony-level battery. The allegation that "said act result[ed] in bodily injury" to Powers does not refer to the act of battery, but to the act of burglary. Indeed, the State was not required to prove that Milo committed felony-level battery against Powers, only that he *intended* to do so when he broke into the apartment. *See Smith v. State*, 671 N.E.2d 910, 912 (Ind. Ct. App. 1996) (holding

that, to obtain a burglary conviction, it was not necessary that the State prove that the defendant committed theft or another felony because the burglary was complete upon the defendants' breaking and entering with the *intent* to commit a felony). Thus, it is irrelevant that the State also charged Powers with misdemeanor-level battery. To the contrary, it is entirely consistent with a theory that Milo *intended* to seriously injury Powers, thus elevating the intended battery to a felony, but that the battery only inflicted bodily injury, which although only a misdemeanor, is sufficient to elevate burglary to a Level 3 felony. *Compare* I.C. § 35-43-2-1(2) (elevating burglary to a Level 3 felony if it results in bodily injury to any person other than the defendant) *with* I.C. § 35-42-2-1(d)(1) (elevating battery to a Class A misdemeanor if it results in bodily injury to any other person).

[26]     To the extent that Milo claims that the trial court erred by concluding that the State presented sufficient evidence to support a finding that he intended to commit felony-level battery, we also disagree.[7] The State presented evidence that Milo stated he was going to "whoop [Powers's] ass," and Hale admitted that she and Milo intended to inflict serious bodily injury when they broke into the apartment. From this, a reasonable jury could conclude that Milo had the

---

[7] If the trial court had granted Milo's motion based on the State's failure to present evidence of an essential element of the crime, its action would constitute an acquittal even if its ruling were incorrect. *See Elkins,* 754 N.E.2d at 644 (citing *Williams,* 634 N.E.2d at 853). But again, it is clear that the trial court did not grant Milo's motion based on the State's failure to prove an essential element of the offense. Instead, it granted the motion based on the alleged deficiency of the charging information.

requisite intent to commit felony-level battery when he broke into Powers's apartment.

[27] In short, the trial court's initial ruling on Milo's motion did not act as an acquittal as it was not based on the State's failure to present evidence of an essential element of the crime charged. Because the trial court's ruling did not act as an acquittal, the court was free to reconsider its ruling. The trial court then correctly determined that, to the extent Milo's motion attacked the charging information, it was untimely, and to the extent that it claimed that there was no evidence of his intent, it was without merit.

## II. *Jury Instruction on Burglary*

[28] In a related argument, Milo claims that the trial court's instruction on the elements of burglary constituted fundamental error. Milo contends that the trial court's instruction on burglary permitted the jury to find him guilty if it found that he intended to commit misdemeanor battery.

[29] Milo admits that he lodged no objection to the instruction at trial, thereby waiving the issue for purposes of appeal unless the instruction constituted fundamental error. *Barthalow v. State*, 119 N.E.3d 204, 211 (Ind. Ct. App. 2019). An error may be fundamental, and therefore not subject to waiver, if it constitutes a substantial, blatant violation of basic principles. *Id.* (citing *Moreland v. State*, 701 N.E.2d 288, 294 (Ind. Ct. App. 1998)). To rise to the level of fundamental error, the error must be so prejudicial to the defendant's rights as to make a fair trial impossible. *Id.* The fundamental error exception to the

contemporaneous-objection rule is narrow and provides relief only in egregious circumstances that make a fair trial impossible. *Id.* (citing *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016)). When considering a claim that a jury instruction constitutes fundamental error, we look to the instructions as a whole to determine if they were adequate. *Id.* (citing *Munford v. State*, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010)). We also consider the instructions as a whole in context of all the relevant information given to the jury, including the parties' closing arguments. *Boesch v. State*, 778 N.E.2d 1276, 1279 (Ind. 2002). If all of this information does not mislead the jury as to the correct understanding of the law, there is no fundamental error. *Barthalow*, 119 N.E.3d at 211.

[30]    Again, to convict Milo of Level 3 felony burglary, the State was required to prove that he knowingly or intentionally broke and entered into the building or structure of another person with the intent to commit a felony or theft therein and that the burglary resulted in bodily injury to any person other than the defendant. I.C. § 35-43-2-1(2). The trial court's Final Instruction No. 4 set forth the elements of burglary as follows:

> A person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary, a Level 5 felony. The offense [is] a Level 3 felony if it results in bodily injury to any person other than a defendant.
>
> Before you may convict Christopher J. Milo of Count 1, Burglary, a Level 3 felony, the State must have proven each of the following beyond a reasonable doubt[:]
>
>     1. Christopher J. Milo;

2. knowingly or intentionally;

3. broke and entered;

4. the building or structure of Anthony W. Powers, Sr.;

5. *with the intent to commit a felony, Battery, in it, by touching Anthony W. Powers, Sr., in a rude, insolent or angry manner;*

6. and the offense resulted in bodily injury to Anthony W. Powers, Sr., who was a person other than the defendant.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find Christopher J. Milo not guilty of burglary, a Level 3 felony, as charged in Count 1.

Appellant's App. p. 104 (emphasis added). Milo argues that this instruction improperly permitted the jury to find him guilty if he committed misdemeanor, as opposed to felony, battery.

[31] As set forth above, the crime of battery is a multi-level or "graded" offense. Depending upon the circumstances, battery can be anywhere from a Class B misdemeanor to a Level 2 felony. I.C. § 35-42-2-1(c)–(k). Milo argues that by stating that the jury could find him guilty of burglary if he had the intent to commit battery by touching Powers in a "rude, insolent, or angry manner," Final Instruction No. 4 fundamentally misstated the elements of the offense of burglary and permitted the jury to find him guilty of burglary even if he had only the intent to commit misdemeanor battery. Although we believe that the wording of Final Instruction No. 4 is not as clear as it might have been, we do not believe it rises to the level of fundamental error.

[32]     We initially note that the first paragraph of Final Instruction No. 4 properly sets forth the elements of burglary, including that the defendant have the requisite intent to commit a felony or theft in the structure or building broken into. Final Instruction No. 4 also states that, to convict Milo of burglary, the State was required to prove that he broke and entered into Powers's apartment "with the intent to commit a felony, Battery, in it[.]" Appellant's App. p. 104. By informing the jury that Milo had to have the intent to commit "a felony, Battery," the instruction properly explains that Milo had to have the intent to commit felony-level battery. However, the instruction then defines battery as "touching Anthony W. Powers, Sr., in a rude, insolent or angry manner." *Id.* This, absent other circumstances, describes only misdemeanor battery. I.C. § 35-42-2-1(c). As such, the instruction could have misled the jury to believe that it could convict Milo of burglary if he intended to commit misdemeanor battery. Thus, Final Instruction No. 4 is, at best, inconsistent and, at worst, misleading.

[33]     Despite the language of Final Instruction No. 4, we conclude that the instructions as a whole, especially in conjunction with the arguments of counsel, adequately informed the jury that, to convict Milo of burglary, it had to find that he had the intent to commit felony battery causing serious bodily injury to Powers when he broke and entered Powers's apartment.

[34]     Battery is a Level 6 felony if it results in moderate bodily injury to any other person and a Level 5 felony if it results in serious bodily injury to any other person. I.C. § 35-42-2-1(e)(1), (g)(1). In addition to the fact that the first

paragraph of Final Instruction No. 4 correctly told the jury that the State had to prove that Milo had the intent to commit a felony, the jury was also given supplemental instructions defining the terms "moderate bodily injury" and "serious bodily injury." *See* Tr. pp. 179–80.

[35] More importantly, both the prosecution and the defense repeatedly explained to the jury that, to convict Milo of burglary, the State had to prove that he committed battery as a felony. During the State's closing argument, the prosecuting attorney stated with regard to the elements of burglary:

> They were going to Anthony Power[s]'s to whoop his ass. That's not friendly touching, that's not a handshake, that's a whooping—whoop his ass, we know what his intentions were when he left Mr. Sailers' apartment to go see Mr. Power[s] the second time, his intention was to whoop his ass. *We also know he intended to cause serious bodily injury*, how do we know that? Miah Hale, her testimony—her transcript—she said—her attorney, Mr. Sisson, asked her even though you didn't touch Mr. Power[s] *the intent of breaking in was to cause some serious bodily injury to him isn't that correct, yes—serious bodily injury to him—whoop his ass.* What was their intent when they left Mr. Sailers' apartment to go over to the Adams Street house—they were going to hurt Mr. Powers. . . . *Where the intent to commit a felony battery in the touching Anthony W. Power[s] in a rude, insolent or angry manner that's the fifth element of count one.* Now, the reason why intent to commit a felony is highlighted is because you don't actually have to commit the felony, you don't actually have to succeed in being successful, *you just have to have the intent at the time you're breaking in to commit a felony,* okay, it doesn't actually mean you were successful in it. So, is battery always a felony? No, we know it's not because count three—if you look at three that's a misdemeanor—because with a misdemeanor all you have to do is hit somebody and cause pain, that's injury. *Now, a felony is—or a battery is a felony*

*when you cause moderate bodily injury or more importantly serious bodily injury.* Remember Jack Sailers said they were gonna go over there to whoop his ass, Miah Hale said much more importantly that they were going over there—down here page three—question four—even though you didn't touch Mr. Powers the intent of breaking in was to cause some serious bodily injury to him, *they intended to cause serious bodily injury and under Indiana statutory (indiscernible) serious bodily injury is a felony, it's a level five felony. So their intent when they broke and entered into the apartment building was to cause him serious bodily injury, to batter him at felony level, that was their intent, it's clear.* Now, the offense resulted in bodily injury, and what we know bodily injury means pain—just causing pain, not serious bodily injury, not moderate bodily injury, just injury—so you don't have to be successful—as I said—in committing the felony, somebody just has to be injured and Mr. Powers was injured, was he injured to the level of moderate or serious bodily injury? Maybe, but it doesn't matter *because you don't actually have to be successful in the committing the crime that you intended to commit, just at the time of breaking and entering you had to have that intent . . . .*

Tr. pp. 157–60 (emphases added).

[36]     During Milo's closing argument, defense counsel stated:

Now, the Prosecutor wants you to take what everybody else is saying and say look that—that fits what I want so that was Chris Milo's intent, well, let's talk about that. So, [Sailers] . . . says that Chris said I'm gonna go whoop his ass, okay, right or wrong he's gonna go whoop his ass, now it wasn't because of the cats it was because he was lied to, okay, so how does [Sailers] saying that Chris said he was gonna go whoop his ass mean that he's gonna commit a felony battery *because his intent had to be to attempt to commit a felony battery*, there's a difference okay, you can see that in the charging information count three is battery resulting in bodily injury, a class A misdemeanor, *then there is felony battery,*

*now the intent is did he intend to commit a battery on him or did he intend to commit a felony battery*—we don't know—it was what his intent was when he went to do the act not what happened from the result of the battery but what Chris Milo's intent was if and when he walked into that room . . . . So, one of the things that I wanted to talk to you about is Miah Hale, . . . she—what it said is by her attorney and upon entering the building you encountered at least one person named Anthony Powers is that correct, yes, then a question from her attorney not from her, not from her statement, but from her attorney—and even though you didn't touch Mr. Powers *the intent of breaking in was to cause some serious bodily injury to him isn't that correct, and she says yes.* That's her intent, *she didn't say that was Chris's intent*, that's her intent, those are her words, *she doesn't say yeah Chris's intent was to cause him serious bodily injury, you know why it's gotta say serious bodily injury [be]cause it's not a felony if it's not serious bodily injury it's just bodily injury which is still the misdemeanor so there was no attempt at a felony when—supposedly when the burglary is happening* . . . . [N]ow you folks may very well believe that he committed that battery, you may very well think that he pushed that door open and went on in to commit that battery *but there is no way in your mind that you can know for sure what his intent was and if his intent was to commit a felony, and if you can't you cannot find him guilty of burglary because he had to have the intent to at least attempt to commit the battery as a felony, you can misdemeanor all day long and it's not gonna be a burglary* . . . .

*Id.* at 165–69 (emphases supplied).

[37]    And again in the State's rebuttal, the prosecuting attorney re-emphasized the State's burden to show that Milo had to intend to commit a felony when he broke into the apartment:

No intent to commit a felony, [defense counsel] really pounded on that, *because it is true that the intent of the defendant is what*

*matters,* how do you understand or how do you know what somebody intends to do? You look at their actions, you look at their words, how else do you know what you're going to do, I'm going to the grocery store—that is my intent—how do you know it? Because I told you—I'm going to go whoop his ass, how do you know what the intent is? He told Mr. Sailers. Miah Hale was with him the entire time, *she said in her change of plea hearing we— we—Mr. Milo and I broke into the apartment building with the intent to cause serious bodily injury, the Defense has conceded that a battery causing serious bodily injury is a felony; he intended to commit felony battery upon Mr. Power[s].* He didn't succeed thankfully but that was his intent. . . .

*Id*. at 173–74 (emphases added).

[38] Based on these statements, we conclude that the jury was well aware of the necessity of finding that Milo intended to commit felony battery when he broke into the apartment. We therefore hold that the trial court did not commit fundamental error with regard to the wording of Final Instruction No. 4. *See McKinley v. State*, 45 N.E.3d 25, 31 (Ind. Ct. App. 2015) (holding that any error caused by the inclusion of the mens rea of "knowingly" in jury instruction of possession with intent to deliver was not fundamental error because "intent to deliver" was listed in instructions and the closing arguments of both sides focused almost exclusively on whether defendant had the intent to deliver), *trans. denied*. *Cf. Rosales v. State*, 23 N.E.3d 8, 15 (Ind. 2015) (holding that inaccurate instruction on mens rea of accomplice liability for attempted murder was fundamental error because State's closing argument repeatedly, and incorrectly, told the jury that specific intent to kill was not required).

# Conclusion

[39] The trial court's reconsideration of its grant of Milo's motion for a "directed verdict" did not violate the prohibition against double jeopardy because the trial court did not grant Milo's motion on grounds that the State failed to present evidence of an essential element of the offense of burglary. Instead, the trial court granted the motion on grounds that the charging information was deficient in setting forth the intended felony. Therefore, the trial court's ruling did not act as an acquittal, and the trial court properly reconsidered its ruling. Also, considering the jury instructions as a whole, and the extensive arguments of counsel, the jury was adequately informed that, to find Milo guilty of burglary, the State had to prove that he intended to commit battery as a felony when he broke into his victim's apartment. Accordingly, we affirm the judgment of the trial court.

[40] Affirmed.

Robb, J., and Pyle, J., concur.